In the Matter of the Claim of MARGARET B. MORTON.

FRIEDA S. MILLER, as Industrial Commissioner, Appellant; SPIRELLA COMPANY, INC., Respondent.

Argued October 4, 1940; decided November 19, 1940.

*John J. Bennett, Jr., Attorney-General* (*W. Gerard Ryan, Henry Epstein* and *Francis R. Curran* of counsel), for appellant.

*Clarence R. Runals, Edward E. Franchot* and *Paul P. Cohen* for respondent.

FINCH, J. The sole question presented on this appeal is whether the claimant was an employee of the respondent company rather than an independent contractor within the meaning of the unemployment insurance law (Labor Law, Cons. Laws, ch. 31, § 500 *et seq.*; L. 1921, ch. 50, as amd. by L. 1935, ch. 468 and subsequent amendments). A hearing was had before a referee of the Division of Placement and Unemployment Insurance of the Department of Labor, who granted the application of claimant for benefits under the law. The employer appealed to the Unemployment Insurance Appeal Board, which also conducted a hearing and thereafter, upon findings of fact, affirmed the decision of the referee. An appeal then was taken to the Appellate Division which reversed as a matter of law the determination of the Appeal Board and dismissed the claim.

The question to be reviewed by us is not whether claimant was an employee of respondent as a matter of fact, but

whether upon the basis of the record before us we must
decide as a matter of law that claimant was not an employee.
Neither the duty nor the power to weigh the evidence rests
with the courts, for that function, by virtue of the statute,
has been imposed upon the administrative authority acting
in a quasi-judicial capacity. (Labor Law, § 534.) In
referring to the procedure under a parallel statute, it has
been said that " where from the evidence either of two
conflicting inferences may be drawn, the duty of weighing
the evidence and making the choice rests solely upon the
board." (*Matter of Stork Restaurant, Inc.*, v. *Boland*, 282
N. Y. 256, 267.) Keeping in mind the restricted scope of
our inquiry, we proceed to examine the record.

Respondent manufactures and sells made-to-order ladies'
undergarments. Claimant was engaged as a " corsetiere "
pursuant to a written contract, which, in part, provided as
follows: The company agreed to grant an exclusive sales
territory to claimant, " to give her the benefit of the Com-
pany's training in Corsetry and Salesmanship," " to furnish
her with the Company's products * * * at the prices
published in the Company's Wholesale Price List," etc. In
return, claimant agreed to take the training given by the
company, to practice " The Company's methods of corsetry,"
to master " its methods of salesmanship," " to keep on
hand at all times a complete set of modeling garments and
a representative, up-to-date assortment of demonstration
models; to use modeling garments for taking measure-
ments," to furnish the company with the names and
addresses of all clients, and to return all samples and liter-
ature upon termination of the contract. The contract was to
run for one year, and was terminable at the option of the
company if the claimant failed to sell at least ten garments
per month over a period of three months. Claimant also
agreed that for the duration of the contract she would not
sell any goods but those of the respondent company, and
that for one year after the termination of the contract she
would not sell any other undergarments within the assigned
territory.

In addition to the foregoing, it has been found by the Appeal Board that, as a matter of practice, claimant was required to submit weekly report cards showing in detail the work performed by her each day of the week, to work at least thirty hours per week and to begin each day at nine o'clock A. M., to follow the routine prescribed by the company's manual of instructions, to deliver to each customer a receipt on forms supplied by the company which bore in large print the "Manufacturer's Agreement" and the name of respondent, to attend sales and instruction meetings conducted by the respondent's city manager, etc.

It has also been found by the Board that claimant was required to sell at the retail prices "suggested" by respondent, and that, although respondent held claimant responsible for the wholesale price, it was not in fact collected until payment had been made by the retail customer. Respondent takes issue sharply with the Board's finding concerning the financial arrangement which actually existed between claimant and respondent. The record contains evidence which, if believed, supports the version accepted by the Board, and, therefore, the Board's findings are conclusive. (Labor Law, § 534.) Although the manner of payment sometimes may be one of the factors to be considered in determining whether one is an employee or an independent contractor (American Law Institute, Restatement of the Law of Agency, § 220), the view which we take of the case makes it unnecessary to consider this aspect at length. (Cf. *Hexamer* v. *Webb*, 101 N. Y. 377, 384; *Matter of Beach* v. *Velzy*, 238 N. Y. 100, 104.)

For the period applicable to the claimant in the case at bar, the statute provided:

"Definitions. As used in this article:

"1. 'Employment,' except where the context shows otherwise, means any employment under any contract of hire, express or implied, written or oral, including all contracts entered into by helpers and assistants of employees, whether paid by employer or employee, if employed with the knowledge actual or constructive of the employer, in which all

or the greater part of the work is to be performed within this state.

* * * * *

" But for the purposes of this article, 'employment' shall not include:

" (1) Employment as a farm laborer;

" (2) Employment by an employer of his spouse or minor child.

* * * * *

" 2. ' Employee ' means any person, including aliens and minors, employed for hire by an employer in an employment subject to this article, except any person whose wages exceed three thousand dollars in any calendar year." (§ 502.)

The distinction between an employee and an independent contractor has been said to be the difference between one who undertakes to achieve an agreed result and to accept the directions of his employer as to the manner in which the result shall be accomplished, and one who agrees to achieve a certain result but is not subject to the orders of the employer as to the means which are used. (*Hexamer* v. *Webb, supra; Irwin* v. *Klein*, 271 N. Y. 477, 485; Clerk & Lindsell on The Law of Torts [9th ed.], p. 65; Pollock on The Law of Torts [14th ed.], p. 64.) " What, then, is the test of this distinction between a servant and an independent contractor? The test is the existence of a right of control over the agent in respect of the manner in which his work is to be done. A servant is an agent who works under the supervision and direction of his employer; an independent contractor is one who is his own master. A servant is a person engaged to obey his employer's orders from time to time; an independent contractor is a person engaged to do certain work, but to exercise his own discretion as to the mode and time of doing it — he is bound by his contract, but not by his employer's orders." (Salmond on The Law of Torts [9th ed.], p. 90.) This general concept, evolved by a long line of tort cases and expressed by many eminent writers on the subject, has been applied in cases arising under the Workmen's Compensation Law (Cons. Laws, ch.

67). (*Matter of Beach* v. *Velzy, supra; Matter of Pierce* v. *Bowen,* 247 N. Y. 305; *Matter of Glielmi* v. *Netherland Dairy Co.,* 254 N. Y. 60.) The same rule also has been applied to cases arising under the unemployment insurance law, the result in the particular case depending upon the facts present in each instance. (Compare *Matter of Scatola,* 282 N. Y. 689, with *Matter of Levine,* 283 N. Y. 577.) It has also been applied in unemployment insurance cases in other jurisdictions. (*Jack & Jill, Inc.,* v. *Tone,* 126 Conn. 114; *Schomp* v. *Fuller Brush Co.,* 124 N. J. L. 487.)

From the nature of the problem, the degree of control which must be reserved by the employer in order to create the employer-employee relationship cannot be stated in terms of mathematical precision, and various aspects of the relationship may be considered in arriving at the conclusion in a particular case. (Restatement of the Law of Agency, § 220.) Therefore we must examine the facts in the case at bar to determine whether the arrangement between claimant and respondent was so altogether lacking in those marks which ordinarily characterize the relationship of employer and employee that claimant must be deemed, as a matter of law, to have been an independent contractor. Respondent urges that the dealings were simply those which are had by vendor and vendee; that claimant bought at wholesale and resold at retail for her own profit; and that, for the period under review in this proceeding, respondent exercised no supervision over the manner in which claimant performed her work. These contentions must be considered in the light of a record containing contrary findings by the Appeal Board which are supported by evidence.

By the terms of the contract, claimant was obligated to pursue respondent's methods of corsetry and of salesmanship. Necessarily it was not claimant, but respondent which determined its methods of corsetry and its technique of salesmanship and, hence, it was respondent which directed the manner in which the work was to be done. Thus, the very written agreement, upon which so much stress is placed by respondent, precluded the use of claimant's

discretion as to the means employed to achieve the agreed result. The failure of claimant to follow respondent's methods would have been a breach of contract on her part.

The subsequent conduct of the parties bears out the plain intendment of the written understanding. Claimant's time was not her own. She was expected to begin her day's work at nine A. M. and to work at least thirty hours a week. In the performance of her work, the modeling garments used for measuring, the samples of respondent's wares, and the advertising literature were supplied by respondent and had to be returned to respondent upon termination of the contract. Her calling card was imprinted with her name together with that of the respondent. The retail prices at which she sold were fixed by the respondent. The receipt for a deposit which she gave to a retail customer bore the name of respondent in large print, and over its name was a " Manufacturer's Agreement " which included a request that the customer have the balance available when due. A report card had to be filed each week showing claimant's daily activities in detail. And further, she was urged to attend a weekly school of instruction conducted by respondent's city manager, as to the selling and fitting of garments the following week. From all of this, the picture presented is not that of one free to exercise her own discretion in the performance of a contract. Rather, it appears that " On the one side there is an intimacy of control and on the other a fullness of submission that imports the presence of a ' sovereign,' as the master, we are reminded, was sometimes called in the old books." (*Matter of Glielmi* v. *Netherland Dairy Co., supra*, at pp. 63,64.)

Except in regard to the fixing of the retail price, respondent does not so much dispute the foregoing facts as it seeks to apportion differently the emphasis to be placed upon particular items. Had the view of respondent been accepted by the Appeal Board, then perhaps its ruling could not be disturbed. But the Appeal Board, having weighed the several factors and having concluded that claimant had been an employee, there is neither principle nor precedent

which would compel a contrary conclusion as a matter of law.

Respondent further contends that the inquiry into the relationship between itself and the claimant must be confined to the terms of the written contract. The Appeal Board found that the true relationship was not evinced by the contract but that in addition the actual practice of the parties which supplemented the written contract had to be taken into account.

This is not an action upon a contract in which one of the signatories seeks to vary the terms of the written agreement by matter dehors the contract. This is a proceeding to determine the right to benefits under the unemployment insurance law and the question involved is whether claimant is within the scope of the statute. An agreement by the employee to waive the benefits of the act is void. (Labor Law, § 512.) It follows that, while an employer may elect to engage an independent contractor rather than an employee, no written agreement may preclude an examination to determine whether the actual relationship is such as to bring the parties within the scope of the law. But even if the inquiry had been limited as contended by respondent, the determination of the Appeal Board still would be warranted, for it was by the very terms of the written contract that respondent reserved to itself, and subjected claimant to, control over the execution of the work. The written agreement expressly provided that claimant was to practice the company's methods of corsetry and salesmanship and, therefore, respondent company had control over the *means* used by claimant in the discharge of her obligation.

It follows that since the Appeal Board was warranted in adopting its view of the facts, the order of the Appellate Division should be reversed and the decision of the Appeal Board reinstated, with costs in this court and in the Appellate Division. (See 284 N. Y. 738.)

LEHMAN, Ch. J., LOUGHRAN, RIPPEY, SEARS, LEWIS and CONWAY, JJ., concur.

Ordered accordingly.