In the Matter of WILSON SULLIVAN COMPANY, INC., Respondent. FREIDA S. MILLER, as Industrial Commissioner of the State of New York, Appellant.

Argued June 8, 1942; decided October 15, 1942.

*John J. Bennett, Jr., Attorney-General (Francis R. Curran* and *Henry Epstein* of counsel), for appellant. There is sufficient evidence to sustain the finding that the real estate salesmen of respondent are its employees under the unemployment insurance law (Labor Law, art. 18; Cons. Laws, ch. 31). They are not independent contractors as a matter of law. (Cons. Laws, ch. 50, §§ 440, 441, 441-a, 441-d, 442-a, 442-b, 442-c; *Roman* v. *Lobe,* 243 N. Y. 51; *Matter of Fitzgerald,* 263 App. Div. 448; *Matter of Rowe,* 263 App. Div. 915; *Matter of Morton,* 284 N. Y. 167; *Matter of Goebber,* 262 App. Div. 1053; *Matter of Keith & Barton,* 262 App. Div. 984; *Matter of Hanrahan,* 262 App. Div. 924; 287 N. Y. 559.)

*Ellis J. Staley, Ellis J. Staley, Jr.,* and *Eugene J. Steiner* for respondent. The salesmen of the respondent are independent contractors and not employees within the meaning of article 18 of the Labor Law. (*Matter of Beach* v. *Velzy,* 238 N. Y. 100; *Matter of Litts* v. *Risley Lumber Co.,* 224 N. Y. 321; *Irwin* v. *Klein,* 271 N. Y. 477; *Matter of Fidel Association of N. Y.,* 259 App. Div. 486; 287 N. Y. 626; *Matter of Morton,* 259 App. Div. 771; 284 N. Y. 167; *Matter of Alford,* 260 App. Div. 826; 286 N. Y. 651; *Matter of Glielmi* v. *Netherland Dairy Co.,* 254 N. Y. 60; *Koehler* v. *Myers,* 21 Fed. Rep. [2d] 486.) The decision of the Appeal Board that sections 440, 440-a, 441-d, 442 and 442-a of the Real

Property Law create the relationship of employer and employee between respondent and its salesmen is erroneous as matter of law. (*Roman* v. *Lobe*, 243 N. Y. 51; *People ex rel. Jackson* v. *Potter*, 47 N. Y. 375; *Wiley* v. *Solvay Process Co.*, 215 N. Y. 584; *Holding Co.* v. *Reis*, 240 N. Y. 424; *Matter of Litts* v. *Risley Lumber Co.*, 224 N. Y. 321; *Psota* v. *Long Island R. R. Co.*, 246 N. Y. 388; *Transit Commission* v. *Long Island R. R. Co.*, 253 N. Y. 345; *Matter of Carnegie Trust Co.*, 151 App. Div. 606; 206 N. Y. 390; *Koehler* v. *Myers*, 21 Fed. Rep. [2d] 486; *Matter of Waroshill*, 263 App. Div. 546.)

FINCH, J.  This appeal presents the question whether respondent, a corporation doing business as a real estate broker in the city of Albany, is liable under the unemployment insurance law (Labor Law, art. 18; Cons. Laws, ch. 31) to make contributions with respect to commissions earned by its salesmen.  The Unemployment Insurance Appeal Board has held that the salesmen are employees and, consequently, that respondent is subject to liability under the law with regard to their earnings.  The Appellate Division has unanimously reversed the Appeal Board upon the facts, holding that the evidence shows respondent's salesmen to be independent contractors.

The scope of judicial review in a proceeding such as this is very limited, being confined solely to a determination as to whether or not there is any substantial evidence to support the conclusion of the Appeal Board.  (*Matter of Morton*, 284 N. Y. 167.)  However, upon the record in this case it cannot be seriously contended that there are any facts sufficient to show that the respondent exercises control over either the results produced by its salesmen or the means employed by them to achieve the results.  In the absence of evidence to prove control there can be no finding that the relationship between respondent and its salesmen is one of employment. (*Matter of Beach* v. *Velzy*, 238 N. Y. 100, 103, 104.)

The sole testimony in this case was given by Mr. Wilson Sullivan, president of respondent.  From his testimony it appears that the corporation plays the following part in assisting its salesmen to achieve results.  The company supplies office and desk space and telephone service, the latter service being paid for from corporation finances.  Prospect leads are furnished the salesmen by direction

of a sales manager of the corporation. The salesmen are also furnished with stationery and office supplies, and blanks for closing sales.

The salesmen themselves may list property for sale. They have no specific hours, no definite routine to follow, nor calls to make during the day. Reports are not required of them. But they merely submit to the company a record of the sales they actually make, and have the privilege of listing with the company so-called " prospect cards " whereby other salesmen are put on notice not to approach a particular man's prospect. Salesmen may operate in a particular territory or not, as they choose, and may engage in other occupations at the same time. One of the salesmen, Casey, is licensed to work not only for respondent but for another broker at the same time. The salesmen are bonded as independent contractors, and their only instructions come from the owners of the property with whom they deal directly.

As already noted, the Department of State has seen fit to license the salesman Casey to work for more than one broker at the same time. Furthermore, the State Insurance Fund has ruled that respondent is not subject to the Workmen's Compensation Law (Cons. Laws, ch. 67) with respect to these salesmen. Finally, by a ruling of the United States Treasury Department, respondent has been held not to be subject to unemployment contributions with respect to salesmen having positions similar to Casey's.

Upon this state of the record there is no substantial evidence upon which to sustain the findings of the Appeal Board. Indeed, a reading of the opinions of the referee and the Appeal Board show that they relied not upon the evidence produced before them, but upon an interpretation of sections 440, 442-A and 442-B of article 12-A of the Real Property Law (Cons. Laws, ch. 50) relating to the licensing of real estate brokers and salesmen. These sections provide that: " § 440. * * * ' Real estate salesman ' means a person employed by a licensed real estate broker to list for sale, sell or offer for sale, * * * to buy or offer to buy or to negotiate the purchase or sale or exchange of real estate, or to negotiate a loan on real estate, or to lease or rent or offer to lease, rent or place for rent any real estate, or collects or offers or attempts to collect rent for the use of real estate for or in behalf of such real estate broker."

"§ 442-a. No real estate salesman * * * shall receive or demand compensation * * * from any person, other than a duly licensed real estate broker regularly employing the salesman, * * *."

"§ 442-b. Discontinuance of salesman's employment * * * The broker shall also return the salesman's license to the department when the salesman's employment terminates by mutual agreement or otherwise, * * *."

It is the contention of appellant that by referring to salesmen as "employees" in the statutes above-quoted, the Legislature has outlawed the common law relationship of independent contractor between broker and salesman and has provided that to obtain a license a man must either be an independent broker or else a salesman in the employ of a broker. It was upon this interpretation of the statute that the Appeal Board found the existence of an employer-employee relationship in this case. It would seem, however, that this statute, even though we could regard it as evidence, is not susceptible of the construction given to it by the appellant and the Appeal Board.

It is a principle of statutory construction that the court should look at the old law, the mischief and the proposed cure and construe the act in question so as to suppress the evil and advance the remedy. (*People ex rel. Jackson* v. *Potter*, 47 N. Y. 375, 379; *Wiley* v. *Solvay Process Co.*, 215 N. Y. 584, 588.) The purpose of article 12-A was to assure by means of licensing competency and the observance of professional conduct on the part of real estate brokers and salesmen. As was said by this court in *Roman* v. *Lobe* (243 N. Y. 51, 54, 55): "The real estate broker is brought by his calling into a relation of trust and confidence. Constant are the opportunities by concealment and collusion to extract illicit gains. We know from our judicial records that the opportunities have not been lost. With temptation so aggressive, the dishonest or untrustworthy may not reasonably complain if they are told to stand aside. Less obtrusive, but not negligible, are the perils of incompetence. The safeguards against incompetence need not long detain us, for they were added to the statute after the services were rendered. We recall them at this time for the light that they cast upon the Legislature's conception of the mischief to be remedied. The broker should know his duty."

It is quite apparent that to effectuate the purposes of the statute as set out in the above opinion, it is not necessary that we should go so far as to hold that the recognized common law relationship of independent contractor has been outlawed by the statute. No reason appears why the standards of competency and honesty among real estate salesmen cannot be maintained even though brokers have no control over the salesmen's selling methods. If the statute and the common law rule can stand together, the statute should not be so construed as to abolish the common law rule. (*Transit Commission* v. *Long Island R. R. Co.*, 253 N. Y. 345, 354, 355; *Matter of Carnegie Trust Co.*, 151 App. Div. 606, 611, 612, affd., 206 N. Y. 390.)

Thus in *Matter of Litts* v. *Risley Lumber Co.* (224 N. Y. 321, 324) this court read into the definition of " employment " in the Workmen's Compensation Law, the common law rule as to the independent contractor relationship, stating: " This definition is not inimical to and does not disturb the distinctions established in the common law between a servant or employee and an independent contractor. The rules which demarcated the relation of master and servant from that of employer and independent contractor are operative in the consideration of claims made under the act."

The State of New Jersey has a statute similar to our article 12-A (New Jersey Cons. Laws, ch. 15, tit. 45, §§ 3, 14). Nevertheless, in the case of *Koehler* v. *Myers* (21 Fed. Rep. [2d] 596), it was held that this statute did not outlaw the relationship of independent contractor between broker and salesman.

We must conclude that this statute, concededly enacted to effectuate other purposes, will not be construed, in the absence of clear and explicit language, to work a change in a well-established principle of the common law. (*Jones* v. *City of Albany*, 151 N. Y. 223, 225, 228.)

It follows that the order appealed from should be affirmed, with costs.

DESMOND, J. (dissenting). Ordinarily, when we are called upon to decide whether a person is an employee engaged in a " covered employment " under the unemployment insurance law (Labor Law, art. 18), we examine into the particular facts of the relationship between that person and the person or entity said to be his

" employer." Then, ordinarily, we apply to those discovered facts the settled rule that if the worker is subject to the orders of another as to the method and manner of his work, he is an employee, and, if not so subject, that he is an independent contractor. (*Matter of Morton*, 284 N. Y. 167.) But there are occupations in which, by command of statute, one who works under the control of another, is, perforce, an employee and not an independent contractor. Whatever be the language of the contracts under which such a person works, the law, to effectuate its own policy, inserts in the contract the law's own terms, to the effect that the worker is, and must be considered, an employee.

Clearly, this is so with real estate brokers and real estate salesmen. The occupation of selling, renting and managing real property for others is closely regulated, in this State, by statutory law. Those statutes exhibit a plainly stated, unmistakable public policy that persons licensed as real estate salesmen may not lawfully work in that calling except as employees of others who are licensed as real estate brokers, that salesmen may not sell real property except under the direction of brokers, and that brokers must assume responsibility for the acts or omissions of their salesmen. No other reason can be assigned for the numerous careful distinctions made by the Legislature, throughout article 12-A of the Real Property Law, between brokers and salesmen. A salesman may, by his particular employer, be permitted considerable freedom of action. He may search out his own prospects and available properties, he may work on commission only and have his choice of hours and places of work — but, if the law is to be obeyed, he must be at all times under the direction and control of a broker, and the broker must stand sponsor for him with the State and with the public.

The very definition of " real estate salesman " in section 440 of the Real Property Law, says that the term means one who is " employed by a licensed real estate broker." No one may become a licensed broker until he has " actively participated in the general real estate brokerage business as a licensed real estate salesman under the supervision of a licensed real estate broker " or has had equivalent experience, for certain specified periods of time; one applying for a salesman's license must set forth the name of the

" broker by whom he is to be employed " and a temporary license may be issued when the salesman's " employer " expresses " willingness to stand responsible for the acts of such salesman  *  *  *." (Real Prop. Law, § 441.)   A salesman's license must set forth the name of the broker " by whom the salesman is employed " and every such salesman's license must be sent by the Department of State, not to the salesman, but to the " real estate broker by whom such salesman is employed " and must be kept " in the custody and control of such broker; " when a salesman leaves the employment of a broker, the latter returns the salesman's license to the Department, which re-issues it and sends it on to the new broker-employer (§ 441-a).   A license as salesman cannot be issued to an officer of a brokerage corporation or to a member of a brokerage partnership (§ 441-b, subd. 2).   A salesman, for his services in selling, renting or otherwise dealing with real property, is forbidden to receive or demand compensation from any person " other than a duly licensed real estate broker regularly employing the salesman  *  *  *" (§ 442-a).   When a salesman's employment with a broker is discontinued, the broker must send the salesman's license back to the State Department, and the salesman cannot thereafter work as such, until there has been issued to him a new license bearing the name of a new broker-employer (§ 442-b).

This repeated use by the Legislature of the word " employed " is not to be considered inadvertent, particularly since everything else in article 12-A of the Real Property Law paints a picture of the conventional relationship of employer and employee, between broker and salesman.   When, later on, the Legislature, in enacting the unemployment insurance law, came to describe the persons and relationships intended to be covered, it used the words " employment," " employer " and " employee " and defined them so broadly (Labor Law, § 502) that no reason is left for excluding the real estate salesmen as to whom the Legislature had earlier used the same verbiage, in the Real Property Law.   We should not ascribe different meanings to the same word, as used in different statutes, unless compelling reasons so dictate.   There are no such reasons here.   To hold as matter of law that these salesmen are independent contractors, we would have to say that there is in this relationship a total absence of the " marks which ordinarily characterize the

relationship of employer and employee." (*Matter of Morton, supra*, p. 173.) Those "marks" have here been plainly painted in by the Legislature itself since it has decreed that such salesmen are to function as employees, and not otherwise. The inconveniences, if any there be, in applying the provisions of the unemployment insurance law to these salesmen, are not for the courts to deal with.

The order of the Appellate Division should be reversed, and the determination of the Unemployment Insurance Appeal Board reinstated, with costs.

RIPPEY, LEWIS and CONWAY, JJ., concur with FINCH, J., DESMOND, J., dissents in opinion in which LEHMAN, Ch. J., and LOUGHRAN, J., concur.

Order affirmed.