In the Matter of ROSELAND AMUSEMENT Co., INC., Appellant. EDWARD CORSI, as Industrial Commissioner of the State of New York, Respondent.

BREWSTER, J. (dissenting). During the years in question the appellant operated a ballroom in the city of New York, and therein provided certain facilities for dancing by such members of the public as became its patrons. In doing this from time to time it engaged certain well known maestros and their "named" orchestras or bands to render their services in producing dance music at stated performances. Whether, under the arrangements whereby such engagements were secured, the leaders and members of the orchestras were employees of the appellant within the meaning of the statute (Unemployment Insurance Law [Labor Law] formerly § 502, now § 511) or instead, the relation was one arising from an independent contract, is the question presented by this appeal. In all the instances in question the engagements of the orchestras and their leaders were secured by written contracts, the general provisions of which were generally uniform in substance.

Before these were entered into the practice was that one or more of appellant's officers would confer with the leader of the orchestra to be engaged, or his agent, often witness an audition, and then fix upon the date and time for the rendition of the music, the lump sum price to be paid therefor to the leader or maestro, the number of the members or units of the orchestra or band which was to perform and such other details as pertained to the furnishing of the particular engagement. This was then followed by the formal execution of the written contract signed by the appellant and by the leader of the orchestra or his agent. The uncontradicted evidence is such as to clearly stamp and define the appellant's engagements of the orchestras and their leaders as an independent contract whereby the leader of a given orchestra would fulfill the contracted engagement under his conductorship, by producing dance music of his own selection at the time and place agreed upon, rendered by a designated number of musicians of his own choosing and hiring. The proofs make it clear that in fulfilling the engagement neither the leader of the orchestra nor the members thereof were subject to any orders, directions or control by appellant whatsoever as to the means which were to be used to achieve the agreed result of the production of modern dance music. The members of the orchestras were in all instances members of the American Federation of Musicians, and most of them, if not all, of Local 802, having exclusive jurisdiction in New York City. In all the instances under review the written contracts which appellant entered into contained provisions to the effect that it was agreed that "the laws, rules and regulations" of the aforesaid federation "are a part of this contract"; and it was further provided therein that the "employer agrees to abide by and conform to the constitution, by-laws, rules and regulations" of said federation "and/or its locals affected thereby". A by-law of said Local

802, in force at all times in question provided that: " Engagements for employment as musicians shall be accepted by members only through contractors. Musicians employed through *such contractors shall be deemed employees of the principals and the contractors shall be deemed the agents of the principals and of the employed* musicians in effecting such *employment.*" (Underscoring supplied.)  Under the rule of incorporation by reference the decision appealed from considered the by-law just quoted as a part of the contracts, and in the light and by the force thereof has determined that what would otherwise constitute the agreement of the parties, both as to form and execution, an independent contract between appellant and him with whom it dealt, it has, by the metamorphosis of the aforesaid by-law of Local 802, been turned into the multiform contract of a separate hiring of the various musicians who composed the orchestras, and that thus they each became employees of the appellant, and their leaders the latter's agents.  In such a view of the situation an anomaly is at once presented, for by section 29 of article X of the by-laws of the Federation the orchestra members were forbidden so to contract.  That by-law is as follows: " Members of the Federation are only permitted to accept, solicit, or negotiate engagements to play in bands and orchestras from members who contract to furnish bands or orchestras, never from the employers or the agents of such to whom the band or orchestra is furnished  *  *  *." Thus although one part of the contract, incorporated into it by reference, expressly forbade the separate hiring, another part, likewise incorporated, provided that such hiring " shall be deemed " to have been made.

The employment of service by means of agreement with an independent contractor does not constitute the employees of the latter, employees of the other party, even under the statutory definitions.  (*Matter of Morton,* 284 N. Y. 167, 173, 175.)  The historic distinction between an employee and such a contractor still applies, and the terms employed in the written agreement do not confine the inquiry.  In *Matter of Morton* (*supra,* p. 175) it is said: " It follows that, while an employer may elect to engage an independent contractor rather than an employee, no written agreement may preclude an examination to determine whether the actual relationship is such as to bring the parties within the scope of the law."  If, then, the terms of the agreement must yield to the actualities in a case where the legal relationship of employer and employee is concealed by language, it follows that the terms which pretend or " deem " such relationship to exist must also yield where the evidence is to the contrary. The words of a written contract descriptive of the relationship of the parties may not bar inquiry and determination of the true relationship.  Actualities control.  (*Matter of Fidel. Assn. of New York, Inc.,* 259 App. Div. 486, affd. 287 N. Y. 626.  See, also, *Matter of Glielmi* v. *Netherland Dairy Co.,* 254 N. Y. 60.)  Here the uncontradicted evidence establishes the contrary.  That the burden of unemployment insurance is designed to be unescapably placed upon the true employer seems as implicit in the statute as the express prohibition of an employee to waive it.  (Labor Law, § 512.)  Such a shifting of the burden, by " deeming " a relationship to exist, which otherwise, in fact and law, does not obtain, would prevent and endanger the statutory objectives.  " Legislative words are not inert, and derive vitality from the obvious purposes at which they are aimed  *  *  *.  Taxes cannot be escaped ' by anticipatory arrangements and contracts however skillfully devised  *  *  *  by which the fruits are attributed to a different tree from that on which they grew.' ". (*Griffiths* v. *Commissioner,* 308 U. S. 355, 358.)

The respondent relies upon the following cases to uphold the decision appealed from, viz., *Matter of Rogavin* (259 App. Div. 774, leave to appeal denied 283 N. Y. 779); *Matter of Ajello* (259 App. Div. 949, leave to appeal denied 284 N. Y. 818); *Matter of Camgros* (264 App. Div. 973, affd. in part 290 N. Y. 838); *Matter of Palmer* (266 App. Div. 705). In all of these there was evidence to sustain a finding that the true relationship of employer and employee existed, aside from the mere terminology of the contracts of hiring. Such evidence showed the existence of such right and power on the part of the employer to direct and control concerning the means to be used in achieving the end result contracted for, that a master and servant relationship ensued. In the *Ajello* case (*supra*) while the reported decision places emphasis on the above-quoted portion of the regulation of the local union as a part of the oral arrangement for hiring the leader of the orchestra, it is noted that there the leader, on behalf of the restaurant owner, was to *assemble* an orchestra to furnish dance music in the appellant's restaurant; that the orchestra was not a permanent organization, and the arrangement of hiring and performance was not, at least outwardly, inconsistent with the pronouncement of the by-law. In the case at bar the uncontradicted evidence establishes an utter lack of any such right to direct or control and there is no evidence whatever of an employer-employee relationship arising from the contracts in question, other than the terminology incorporated therein by reference to the effect that such relationship was to be " deemed " to exist. The evidence, however, discloses that on the contrary the true relationship between the appellant and the parties with whom it dealt constituted the latter independent contractors. (See *Matter of Miller,* 262 App. Div. 385.)

The decision appealed from should be reversed on the law, and the initial determination of the Industrial Commissioner annulled, with costs.

Hill, P. J., Heffernan and Foster, JJ., concur in decision; Brewster, J., dissents in opinion in which Lawrence, J., concurs.

Determination affirmed on the authority of *Matter of Ajello* (259 App. Div. 949, leave to appeal denied 284 N. Y. 818); *Matter of Camgros* (264 App. Div. 973, affd. in part 290 N. Y. 838).

