Wachtler, J. (dissenting).
This is an appeal from an interlocutory order of the Appellate Division, Third Department, reversing a decision of the Unemployment Insurance Appeals Board and remitting the matter for further proceedings to the board. The decision of the board had affirmed the decision of the referee which sustained the determination of the Industrial Commissioner holding claimants eligible for benefits of unemployment insurance.
*957 The pertinent statutes to be considered are:
Labor Law, § 591.
“ 1. Unemployment. Benefits shall be paid only to a claimant who is totally unemployed and who is unable to engage in his usual employment or in any other for which he is reasonably fitted by training and experience.
“2. Availability and capability. No benefits shall be payable to any claimant who is not capable of work or who is not ready, willing and able to work in his usual employment or in any other for which he is reasonably fitted by training and experience.”
Labor Law, § 593.
“ 1. Voluntary separation
(a) No days of total unemployment shall be deemed to occur after a claimant’s voluntary separation without good cause from his last employment * * * In
addition to other circumstances that may be found to constitute good cause, voluntary separation from employment shall not in itself disqualify a claimant if circumstances have developed and in the course of such employment that would have justified the claimant in refusing such employment in the first instance under terms of subdivision two of this section.
“ 2. Refusal of employment. No days of total unemployment shall be deemed to occur beginning with the day on which a claimant, without good cause, refuses to accept an offer of employment for which he is reasonably fitted by training and experience * * * No refusal to
accept employment shall be deemed without good cause nor shall it disqualify any claimant otherwise eligible to receive benefits if * * *
(d) the wages or compensation or hours or conditions offered are substantially less favorable to the claimant than those prevailing for similar work in the locality, or are such as tend to depress wages or working conditions. ’ ’ Labor Law, § 623.
‘ ‘ A decision of the appeal board shall be final on all questions of fact ”.
This case involves 98 employees of a Bethlehem Steel plant who were laid off their regular jobs due to lack of available work. They applied for unemployment insurance after refusing to *958 accept jobs in the same plant but in a different unit and at a substantially lower wage rate. The Industrial Commissioner found and the referee upheld the finding that: “ It appears that each of the claimants would have suffered a substantial reduction of earnings as a result of acceptance.”
The employer’s practice was to hire everyone as a laborer in the lowest pay grade and after time advance them within their occupational specialities. The men involved in this case had obtained various degrees of advancement as a result of their seniority. The union contract stipulated that in case of layoffs due to a work force reduction the employees with the most seniority would “ bump ” men with less seniority in their own unit or department. If no job was available in the employee’s immediate unit, he would be offered a job in another department if work was available there. An employee accepting placement in the ‘ ‘ foreign ” department would retain his seniority in his regular department, but would get the lowest seniority in the ‘ ‘ foreign ’ ’ department. This, in effect, would prevent him from getting choice work, incentives, etc. in the “ foreign ” department.
The controversy in this case arose when the employees involved were offered jobs as pool laborers in another department but refused to take the job. The finding of fact by the referee and board which was accepted by the Appellate Division and must be accepted by this court (see Labor Law, § 623, supra) was that the men would have suffered a' substantial reduction in earnings. The finding of fact confirmed by the Appellate Division was that each man would face at least a 15% reduction in wages if he took the offered employment. The board, therefore, held that the employees’ refusal to take the new jobs was with good cause.
As previously noted, in reviewing the decision of the board, this and other reviewing courts are bound by findings of fact made by the board. (Labor Law, § 623.) / "iy decision of the board should be accepted if it has a ‘‘ ratic al basis ’ ’ in the record. (Matter of Mounting & Finishing Co. v. McGoldrich, 294 N. Y. 104, 108; see, also, Matter of Morton [Miller], 284 N. Y. 167, 169-170.) Since the board’s interpretation of good cause is really a factual matter, it should be upheld if there is substantial evidence in the record to support the finding, unless it can be said as a matter of law that the interpretation is wrong. *959 (See Matter of Kotlowitz [Catherwood], 24 A D 2d 813.) Although the board is not free to go beyond the bounds of the statute in defining what good cause is (cf. Matter of Swalbach v. State Liq. Auth., 7 N Y 2d 518, 522), this court should not disturb the construction given statutes and regulations by the administrative agency responsible for their administration unless such interpretation is irrational or unreasonable. (Matter of Howard v. Wyman, 28 N Y 2d 434.) In Matter of Matyevich [Catherwood] (15 A D 2d 387, 388) the court was called upon to review an agency policy of treating separate industries separately in deciding whether a person was receiving the prevailing wage for “ similar work ”. The court pointed out that there was nothing in the statute even hinting at such a interpretation but affirmed the board’s determination since it was not unreasonable. I believe the board’s conclusion in the case at bar that a substantial wage difference together with the lessened incentives and seniority constituted good cause for not taking the new job was a reasonable interpretation of the statute and I would uphold the board’s decision.
Unlike the case in Matter of Swalbach v. State Liq. Auth. (7 N Y 2d 518, 522, supra) the board’s interpretation of the statute was clear and could be applied with consistency to all pertinent cases. The main complaint of the respondent was the board’s seeming sole reliance on the wage differential to justify the employees ’ refusal to take the offered employment. The referee did state that “It is immaterial that most of the claimants were suited to the offered employment by experience ”. It is also true that the employees would have had to accept the same jobs had they been offered those jobs within their own department. As a matter of fact, some of the men did work in a downgraded position in their home department before being laid off. However, it should be noted that the requirement that the men work in a lower position in their own department was a contractual obligation not an unemployment insurance requirement. There was no contractual requirement that the employees take work in a “ foreign ’ ’ department. The distinction between a home unit and a foreign unit requirement is entirely rational since an employee would, earn less, have less mobility, less security, and virtually no seniority in a foreign unit.
*960 What is most germane is that the board’s seemingly sole reliance on the substantial wage differential between the regular and offered job was not an “ unreasonable or irrational ” interpretation of the applicable statutes'. In its decision, the Appellate Division stated as its rationale for reversing the board: ‘1 The said subdivision 2 of section 593 contains four subparagraphs which specify what shall be deemed not to be without good cause and the fact that the wage offered is less than what the claimants previously had been earning is not mentioned therein. Since the sole ground or fact relied upon by the board for finding there was good cause for the refusal of employment is that the wages were substantially less than that which the employees had been earning in their capacity as skilled workers, the determination was erroneous as a matter of law” (37 AD 2d 98, 101; citations omitted).
I agree with the Appellate Division that this case does not fit into any enumerated paragraphs under section 593 (subd. 2) of the Labor Law. Paragraph (d) of subdivision 2 talks of wages being substantially less than those prevailing for similar work in the locality, but there is no evidence in the case at bar that the wage offered the employees in their “new” job was substantially less than that paid for similar work elsewhere. The evidence only showed that the wage was substantially less than the wage the employees received in their regular jobs. However, the fact that the situation in this case does not fall under any of the categories which the Legislature specifically said could not be deemed to be refusing employment “ without good cause ’ ’ does not mean that the situation in this case must ipso facto be considered to be a refusal without good cause.
In Matter of Crowe (Corsi) (280 App. Div. 427, 430, affd. 305 N. Y. 699) the court stated that “ the list is not exclusive by its very terms but merely fixes certain negative criteria ’ ’. The court pointed out that there may be other good reasons for refusal to take employment. (Id.) Par from being an irrational interpretation of the statute, the Crowe and board interpretation appears to be the most rational interpretation of the statute. Section 593 (subd. 1) of the Labor Law states “In addition to other circumstances that may be found to constitute good cause ”. Even assuming arguendo that the employees in the case at bar fall under subdivision 2 (Refusal of employ *961 ment) rather than subdivision 1 (Voluntary separation)*, there is no discernable reason to make the definition of good cause broader in subdivision 1 than in subdivision 2. It should also be noted that subdivision 2 is divided into two sentences. The first sentence merely talks of refusing employment without good cause, leaving that phrase undefined. All the second sentence does is to limit the board’s wide discretion, inherent in the undefined phrase “without good cause” by stating that the board cannot under any circumstances deem certain situations to be refusals without good cause. There is no wording that would lead one to believe the list was exclusive. On the contrary, the broad language in the first sentence would be superfluous at best and very misleading at worst if the list in the second sentence was meant to be exclusive.
Assuming then, that the list in section 593 (subd. 2) of the Labor Law is nonexclusive it is, as pointed out by the Industrial Commissioner in his brief, within the discretion of the board to determine what constitutes refusing employment without good cause. The board has been construing the statute as it has in this case for 12 years without the legislative correction we would expect if the board were misinterpreting the statute.
Our court has previously upheld a decision to give an employee unemployment insurance benefits after the employee had refused to accept a job offer simply because of monetary consideration. Matter of Marsh (Catherwood) (13 N Y 2d 235) concerned a discharged $95-per-week bookkeeper who refused to accept a $90-per-week job. We held that the definition of what was a “ substantially less favorable ” wage (Labor Law, § 593, subd. 2, par. [d]) was left to the board’s discretion subject to reversal only if the board’s decision was irrational. (Id., at p. 239.) We held, further, that it was not error as a matter of law to hold, as the board did, that a $90 wage when the prevailing wage rate was $103 was a “ substantially less favorable ” wage. (Id., at p. 240.) This court upheld the board in Marsh even though the employee was offered the very same job. (Id., at p. 241.)
*962 The Marsh case differs from the case at bar in that Marsty involved a decision concerning the prevailing .wage rate and thus fell within the fourth mandate of section 593 (subd. 2) of the Labor Law. But the case still stands for the proposition that the board is to be given great discretion in interpreting the statute it is to administer. That discretion should be just as broad when the board is interpreting the words ‘ ‘ without good cause ” in the first sentence of section 593 (subd. 2) as when it is interpreting “substantially less favorable ” in sectión 593 (subd. 2, par. [d]). Moreover, Marsh also demonstrates that a “mere” difference in salary is enough to justify a refusal of new employment. (See, also, Matter of Groner [Corsi], 267 App. Div. 1021, 1022, affd. 293 N. Y. 802; Matter of Jones [Catherwood], 14 N Y 2d 558, 559; Matter of Matyevich [Catherwood], 15 A D 2d 387, 388 [by implication].) Matter of Wetzig (Corsi) (304 N. Y. 916, 917) seemed to limit the board’s discretion to a greater degree when a mere salary differential was involved, but Marsh appears implicitly to have overruled Wetzig as Judge Scileppi implied in his dissent in Marsh (13 N Y 2d 235, 244, supra).
The sub silentio reason that appears to have impelled the court below to put a somewhat tortured interpretation on section 593 in order to reverse the board’s decision, was a feeling that it just wasn’t right for a person who could be employed in a job for which he was qualified to rely on unemployment insurance for his support. Óf course, the unemployment insurance statutes were not meant to regulate wages or be a substitute for minimum wage laws. (Matter of Sellers [Mays, Inc.—Catherwood], 13 A D 2d 204, 205-206.) The main goal of the law is to ease the hardship of involuntary unemployment (Labor Law, § 501) but it was also determined by the Legislature that it is often economically better for society in the long run to leave workers idle for a time rather than to have them take jobs having a lower wage and involving less skill. (See 55 Yale L. J. 71-72.) In the Matter of Tucker (Lubin) (8 N Y 2d 1145) this court held that a trained actress did not have to take a job as a typist even though she had previously worked as a typist. The Appellate Division decision would be contrary to the spirit of the Tucker and Marsh cases since in both of those cases the employees could have supported themselves in jobs in which they had worked previously during some part of their careers. In the *963 case before us the Appellate Division stated-. “ To hold otherwise would mean that workers in this State would be subsidized by unemployment insurance benefits when by accepting work for which they are fitted by experience and training they could support themselves.” (37 A D 2d 98, 102.)
Section 593 (subd. 2, par. [d]) is also violative of the sentiment expressed by the court below, but that section is unarguably a legislative mandate. The objection to the board’s decision voiced by the Appellate Division is not at all irrational and if not constrained by the statute and case law involved, I would vote to uphold it. But if a solution is called for, it is a legislative and not a judicial one. As long ago as 1936 when this court first held the unemployment insurance statute to be constitutional, the court noted that many people had criticized the statute’s provision which allowed a capable employee to refuse work and still receive unemployment benefits. However, we said there that if that was unreasonable and unjust it was a legislative not a judicial function to correct the inequity. (Chamberlin v. Andrews, 271 N. Y. 1, 15.) Similarly, in Matter of Heitsenrater (Hooker Chem. Co.— Catherwood) (19 N Y 2d 1, 9) this court held that a firing of an employee for breaking a no-strike clause could not be considered, misconduct under section 593 (subd. 3) of the Labor Law. We said that if it was unreasonable to allow a person who had broken a no-strike clause to receive unemployment insurance, the statute had to be altered by the Legislature not the judiciary.
In view of our past decisions and a very strong policy of allowing an administrative agency to interpret the statute it has to administer, unless that interpretation be unreasonable and with no basis in law, I would reverse the decision of the Appellate Division. There are persuasive policy arguments against allowing the employees in this-case to collect unemployment insurance, but those sentiments are not reflected in the wording of the statute. To accept the rationale of the court below would do the same violence to certain specific sections of the statute (e.g., § 593, subd. 2, par. [d]) and our decisions in Tucker and Marsh as it did to the award of benefits in the case at bar.
I do not believe the interpretation put on the statute by the Industrial Commissioner, the referee and the insurance appeals board was unreasonable as a matter of law.
*964 Accordingly, I would reverse the decision of the court below and reinstate the determination of the appeals board.
Order affirmed, etc.

 Some men were told of the “ new ” job offer before they were laid off while others had been laid off for a while before being offered the “ new ” job. The former group at least has a strong argument that their refusal was really part of the process of involuntary separation from their job rather than a refusal of employment.