■ In the Matter of the Claim of FREDERICK HAWTHORNE, Respondent, v PEARTREES, INC., et al., Appellants. WORKMEN'S COMPENSATION BOARD, Respondent.—Appeal from decisions of the Workmen's Compensation Board, filed July 11, 1974 and December 26, 1974, which reversed a referee's decision and held that the deceased employee's accident arose out of and in the course of his employment. Following a one-car accident at approximately 3:45 A.M. on August 31, 1971, the now deceased employee was discovered severely injured in an overturned automobile blocking the southbound lanes of the West Side Highway near the Chambers Street Exit in New York City. According to his testimony, he was employed at the time by appellant Peartrees, Inc., as a bookkeeper and assistant floor manager and also performed some tasks for the New York Auto Rental Company, which was operated out of Peartrees' Restaurant by appellant O'Keefe Auto Service Corporation. One Michael O'Keefe served as president of both appellant corporations, and the deceased testified that it was upon the order of Mr. O'Keefe that he was driving one of New York Auto Rental's cars to his home at 60 Riverside Drive in Manhattan when the mishap occurred. Finding that the accident arose out of and in the course of the deceased's employment and that appellant Peartrees, as general employer, and appellant O'Keefe Auto, as special employer, were equally liable therefor, the board reversed the decision of a referee disallowing the claim and awarded the deceased compensation benefits. The appellants all contend that the record does not contain substantial evidence to support the board's finding that the accident arose out of and in the course of the employment. Essentially, both sets of appellants contend that the testimony of the deceased that he was on his way home at the time of the accident is incredible. Credibility is for the board and in this case the critical factual issue was whether or not the claimant was ordered by the owner and president of both employers to drive a rental car from the employers' premises to his home. The claimant testified that he was so ordered and the owner and president of the employers conceded that he at least knew that one of the rental cars was to be taken home by the claimant as a favor to the president so that it would not be illegally parked on New York City streets. The employers' representative also testified in substance that, among others, the claimant was expected to cause the rental cars to be moved from tow-away zones around the restaurant. If the claimant's testimony as to being ordered to drive the car had needed corroboration, this record amply provides it, including but not limited to the employers' report of accident. The board could have found either way and its choice on credibility is not subject to change upon this appeal (see Workmen's Compensation Law, §§ 20, 23; *Matter of Guggenheim v Hedke & Co.*, 32 AD2d 1017, 1018, affd 27 NY2d 596; *Matter of Molina v West Coast Container Co.*, 28 AD2d 1057; *Matter of Sosnovich v Trefflich Bird & Animal Corp.*, 12 AD2d 538; *Matter of Trama v Gardiene*, 281 App Div 720; *Matter of Flugel v Odenbach Shipbuilding Corp.*, 272 App Div 984). The claimant testified that at the time of the accident he was on his way home and whether or not the route was direct only goes to the question of a substantial deviation from the employment and in this case there is no evidence of any deviation which could have caused the accident (see *Matter of Sosnovich v Trefflich*

*Bird & Animal Corp., supra.)* Unlike *Matter of Pasquel v Coverly* (4 NY2d 28) the claimant herein was required by his employment to be traveling after a night of little sleep. The additional contention of the appellant, Peartrees, Inc., that the record does not support any connection between its employment and the accident is without any merit. Decisions affirmed, with one bill of costs to the Workmen's Compensation Board against the appellants jointly. Greenblott, J. P., Sweeney and Herlihy, JJ., concur; Main and Larkin, JJ., dissent and vote to reverse in the following memorandum by Main, J. We respectfully dissent. The board and the majority predicate their conclusion of compensability on findings that the employer directed the claimant to drive the rental vehicle to his home and that in the course of driving home claimant struck an abutment on the northbound lane of the West Side Highway. We will concede that, upon the record here, the board could conclude that the employer requested claimant to drive the vehicle home for the night. However, we conclude that there is no substantial evidence to support the conclusion that at the time of the accident the claimant was upon a journey in the employer's business or interests. The record clearly demonstrates that at the time of the accident claimant was driving away from his home and proceeding south, though he testified he was northbound. He had quite obviously deviated from his assignment to satisfy a personal whim or fancy. While it may have been his employer's business which sent the claimant upon his journey, it was not the employer's business which brought exposure to the perils in consequence of which he was injured (cf. *Matter of Pasqual v Coverly,* 4 NY2d 28). The claimant testified that he was headed homeward in a northerly direction on the West Side Highway when a wheel locked and a tire hit an abutment, causing the car to go "up and over" a cement wall of considerable height. This is his incredible explanation for the fact that his car came to rest in the southbound lane. The testimony of the tow truck operator and the police report show skid marks, indicating travel in a southerly direction, in the southbound lane behind the overturned vehicle and no marks in the northbound lane. A cement wall separated the lanes so that, if the claimant's version is to be believed, as his car headed north, it struck the cement wall, scaled the wall, changed its direction in midair, landed on its wheels, then proceeded south and overturned. We realize that it is not the function of the court to weigh the evidence, but rather the duty is to determine whether there is a reasonable fulcrum of support in the record to sustain the findings of the administrative agency *(Matter of Morton,* 284 NY 167, 170). "It is the primary function of the courts to be ever alert as to the enforcement of the requirements of substantial evidence" *(Matter of Paulsen [Catherwood],* 27 AD2d 493, 495). In *Edison Co. v Labor Bd.* (305 US 197, 229), the court, in defining substantial evidence, stated: "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion". A review of the record with these principles in mind provides no reasonable fulcrum of support for the board's determination. The version offered by the claimant is totally unbelievable. The written statement of the witness Oppenheim, obtained shortly after the accident, contradicted his later testimony at the hearing in every material aspect and surely was not such evidence as a reasonable mind might accept as adequate to support a conclusion. On the other hand, the evidence presented by the appellants was of such a nature as to be in harmony with reason and logic and was readily acceptable to a fair and reasonable mind. Moreover, contrary to the majority's statement, it plainly establishes a substantial deviation from employment by the claimant, which

resulted in the accident. Our duty to enforce the requirements of substantial evidence dictates that the decision of the board be reversed, since there is no such evidence to sustain the board's determination. The decision of the board should be reversed and the claim dismissed.