OPINION OF THE COURT
Eli Wager, J.
The issue in this action for a declaratory judgment, submitted to the court on a stipulated statement of facts, is which of three insurers is obligatd to pay the amount of a settlement achieved in a personal injury action.
The plaintiff in the personal injury action, George J. Frintzilas, was struck by a 1973 Lincoln operated by defendant Charles Maniscalco at or near the curb on the south side of Roosevelt Avenue in Queens County while Maniscalco was backing the vehicle across Roosevelt Avenue from a parking lot on the north side to one on the south side. Maniscalco is the brother-in-law of defendant Dominick Relio, lessee of the land and operator of the two parking lots (which appear to be known collectively as the Domi *307 nick Relio Parking Lot). In his deposition, the transcript of which has been annexed and made a part of the stipulation, Maniscalco denied that he was “working” at the parking lots or “working for” Dominick Relio on the day of the accident but answered affirmatively when asked if he was “working helping” him which he alleged he did two or three or maybe four times a week. He asserted that he was not paid for his services and that he was then and presently “unemployed”. The Lincoln was owned by one Diane Gold-stein and left at the north lot on the day of the accident by Albert M. Goldstein. The vehicle was parked on the premises on a monthly basis and the Dominick Relio Parking Lot had in its possession a set of keys. Maniscalco testified that on the day of the accident he was the only one in attendance at the lots, that he observed Goldstein deliver his vehicle at approximately noon but that he did not speak to him or give him a receipt or parking ticket, and that Goldstein did not give him his keys to the car. He testified that he entered the vehicle, which Goldstein had left in front of the parking lot office in the north lot, 10 to 15 minutes later with the intention of parking it in the south lot. Frintzilas was apparently hit as Maniscalco was backing the vehicle across Roosevelt Avenue.
Defendant Empire Mutual Insurance Group (Empire) was the insurer of the Goldstein vehicle. Defendant Allstate Insurance Company (Allstate) had issued an automobile liability policy to Jennie Maniscalco, wife of Charles, and plaintiff General Accident Group (General) had issued a general liability policy to Dominick Relio covering the parking lot premises.
The personal injury action brought by Frintzilas against Albert M. Goldstein individually and as the administrator of the estate of Diane Goldstein, Charles Maniscalco and Dominick Relio, doing business as Dominick Relio Parking Lot, was settled for $110,000, $55,000 to be paid by General and $55,000 by Empire. In the settlement agreement the respective insurers reserved their rights to resolve the coverage issues at a later date, a resolution they now seek in this action for a declaratory judgment in which each of them seeks to avoid liability on the basis of exclusionary clauses in the policies.
*308 THE EXCLUSIONS
Empire’s liability policy in the amount of $100,000/$300,000 covering the Goldstein vehicle defines an insured person as any person other than the named insured “using such automobile [an ‘owned vehicle’] with the permission of the named insured, provided his actual operation * * * is within the scope of such permission” but excludes coverage with respect to an “owned vehicle while used by any person while such person is employed or otherwise engaged in the automobile business, but this exclusion does not apply to *** any partner, agent or employee of the named insured”. “Automobile business” is defined as “the business or occupation of selling, repairing, servicing, storing or parking automobiles”.
The Allstate policy in the amount of $25,000/$50,000 issued to the spouse of Charles Maniscalco, which defines “named insured” as including the spouse of a named insured if a resident of the same household, also contains an automobile business exclusion which, as applicable to a nonowned automobile, excludes coverage for such a vehicle while maintained or used by any person while such person is employed or otherwise engaged in “(1) the automobile business of the insured or any other person or organization”. “Automobile business” is defined as in the Empire policy.
The $300,000 policy issued to Dominick Relio by General excludes coverage for, inter alia, “bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of (1) any automobile or aircraft owned or operated by or rented or loaned to any insured, or (2) any other automobile or aircraft operated by any person in the course of his emplpyrnent by any insured; but this exclusion does not apply to the parking of an automobile on the insured premises, if such automobile is not owned by or rented or loaned to any insured”. “Insured premises” is defined as including “the ways immediately adjoining premises on land”.
Thus, the Goldstein policy issued by Empire excludes coverage for Frintzilas’ injuries under the automobile business exclusion if Maniscalco is deemed “employed or otherwise engaged in the automobile business” unless Manis *309 calco may be deemed a “partner, agent or employee” of Goldstein. The Allstate policy covering Maniscalco excludes coverage if Maniscalco may be deemed to have been “employed or otherwise engaged in the automobile business”. General’s policy covering Rello’s business premises appears to exclude coverage if the automobile was operated at the time of the accident by an insured or a person in the course of his employment, but excepted from the exclusion is “the parking of an automobile on insured premises, if the automobile is not owned by or rented or loaned to any insured,” premises defined as including “ways immediately adjoining” the premises.
It appears to be beyond question that Maniscalco was at least “otherwise engaged in” the business of parking automobiles as that term is used in the Empire and Allstate exclusions. The phrase is clearly distinguished from the word “employed” because of the use of the word “otherwise”, and thus must be given a more generalized construction, as for example, simply being “involved” or having “some interest” in an affair (30 CJS, Engage, p 700). To the extent that to be “engaged in” implies something more than occasional participation and implies some continuity of practice (People v Bright, 203 NY 73), Maniscalco’s participation or involvement in the business of parking automobiles (two, three or four times a week) appears to have had the requisite continuity.
It also appears that Maniscalco may be deemed to have been “employed” in the automobile business. The word “employee” is not a word of art (30 CJS, Employee, p 672), nor is the word “employment” (30 CJS, Employment, p 682). The word “employee” does not necessarily connote the payment of compensation (30 CJS, Employee, p 673) and an “employment” may be engagement in services with or without expectation of compensation (30 CJS, Employment, p 683). Thus, anyone performing services is “employed” (Smith v Murphy, 384 Ill 34) and a man who does the work of another is “employed” in it although he receives no wages (Antichi v New York Ind. Co., 126 Cal App 284). In sum, the employer-employee relationship does not turn upon the payment of wages (see Bertino v Equitable Fire & Mar. Ins. Co., 214 NYS2d 155) and the relationship *310 may be determined on the basis of any one of a number of factors (see Matter of Pelow v Sork Enterprises, 39 AD2d 494; Matter of Bianculli v Times Sq. Stores, 34 AD2d 696; see Matter of Grigoli v Nito, 11 AD2d 581) including the element of control (see Matter of Morton, 284 NY 167; Matter of Wilson Sullivan Co., 289 NY 110). Here, Maniscalco testified that he “helped” his brother-in-law, which is tantamount to. saying that he was in the “service” or “employ of another” (Webster’s Third International Dictionary, p 1053) and' thus subject to direction and control. While the .word “employed” and “employee” in insurance policies denotes regular employment as distinguished from occasional, incidental or casual employment (Daub v Maryland Cas. Co., 148 SW2d 58 [Mo]), under some circumstances regular employment one or two days a week is considered “continuous employment” (Cox v Brown, 227 Mo App 157). Here, Maniscalco was by his own admission not in the employ of anyone else (cf. Consolidated Mut. Ins. Co. v Security Ins. Co., 97 NJ Super 528) and he conceded he helped Relio on a regular basis two, three or four times a week. It appears that, upon the stipulated facts, Maniscalco may be deemed to have been “employed” in as well as “otherwise engaged in” the automobile business insofar as the definition in the Empire and Allstate policies is concerned.
The determination that Maniscalco was an employee of Relio (whose status was that of bailee [see Ellish v Airport Parking Co. of Amer. 42 AD2d 174, app dsmd 33 NY2d 764, affd 34 NY2d 882]) moots General’s argument that the exclusion in the Empire policy is rendered inoperative because Maniscalco was an agent of Goldstein.
It thus appears that if there is insurance coverage for Frintzilas’ injuries, such coverage must come from General.
General urges that in order for the accident to come within the exception to the exclusion contained in its policy, Maniscalco must have been either an “insured” or an “employee”. Assuming that this is the case (although the clause as written is ambiguous), it has already been determined that Maniscalco may be deemed an “employee”. General also contends that the accident did not *311 occur while the Goldstein vehicle was being parked “on insured premises”. General contends that the sidewalk is the “way immediately adjoining the premises” as defined in its policy but that the accident occurred in the street near the curb.
To construe the phrase “adjoining ways” as sidewalks, rather than roads or streets, where the insured premises are lots for the parking of automobiles, is to render the provision almost meaningless. Since “ways” connotes a means of passage from some place to some other place, a roadway or path which leads to no place or object to which a person has an interest or right to go is not a “way” (Dennis v Wilson, 107 Mass 591). Clearly, an employee engaged in the business of parking automobiles has no right to drive on the sidewalk (except to cross at a curb cut) and the sidewalk presumably will not take him where he wants to go (except as noted). If the intent of the policy was to define a “way” as simply a curb cut across a sidewalk, that intent could easily have been expressed. The court is impelled to take judicial notice of the fact that operation of a parking lot necessarily involves the use of adjacent streets as well as curb cuts and driveways. The limited construction of “insured premises” urged by General is unreasonable and illogical and, on this record, General cannot be deemed to have met its burden of showing that its construction of its exclusionary clause is the only one that can be fairly placed upon it (see Sincoff v Liberty Mut. Fire Ins. Co., 11 NY2d 386; American Fid. Fire Ins. Co. v Pardo, 32 AD2d 536).
To deem Frintzilas’ injuries to be within the policy’s coverage is consonant with a prior provision in the policy which states that the company will pay all sums which the insured shall be obligated to pay because of bodily injury or property damage “caused by an occurrence and arising out of the ownership, maintenance or use of the insured premises and all operations necessary or incidental thereto” (emphasis supplied). Although Maniscalco is not an insured as defined in the policy, Relio, the insured, may be deemed liable for the injuries inflicted upon Frintzilas under the doctrine of respondeat superior (see Paine v Finkler Motor Car Co., 220 Wis 9).
*312 CONCLUSION
Since Maniscalco was an “employee” of General’s insured and since the accident occurred on insured premises, it appears that General is the insurer primarily liable for the payments made to Frintzilas. Thus, the parties are entitled to judgment declaring General’s liability.