In the Matter of the Claim of MIKE CASSARETAKIS.

FRIEDA S. MILLER, as Industrial Commissioner of the State of New York, Appellant.

STANDARD DREDGING CORPORATION, Respondent.

In the Matter of the Claim of JOSEPH BERGEN.

FRIEDA S. MILLER, as Industrial Commissioner of the State of New York, Appellant.

INTERNATIONAL ELEVATING COMPANY, Respondent.

In the Matter of the Claim of JAMEL SHEREDOS.

FRIEDA S. MILLER, as Industrial Commissioner of the State of New York, Appellant.

LAKE TANKERS CORPORATION, Respondent.

In the Matter of the Claim of JAMES R. KNOWLSON.

FRIEDA S. MILLER, as Industrial Commissioner of the State of New York, Appellant.

MATTON STEAMBOAT Co., INC., et al., Respondents.

In the Matter of the Claim of DAVID SCHEIN.

FRIEDA S. MILLER, as Industrial Commissioner of the State of New York, Appellant.

FAIR WATER TRANSPORTATION Co., INC., Respondent.

In the Matter of the Claim of FRED A. SMITH.

FRIEDA S. MILLER, as Industrial Commissioner of the State of New York, Appellant.

BEN FRANKLIN TRANSPORTATION Co., INC., Respondent.

120

Argued June 15, 1942; decided October 15, 1942.

John J. Bennett, Jr., Attorney-General (Henry Epstein, W. Gerard Ryan and Francis R. Curran of counsel), for appellant. The unemployment insurance law (Labor Law, art. 18; Cons. Laws, ch. 31) does not attempt to modify, alter or supplement the rights and liabilities of the parties to any maritime contract, nor does it deal with remedies enforceable in admiralty. (New York C. R. R. Co. v. White, 243 U. S. 188; Matter of Doey v. Howland Co., 224 N. Y. 30; Washington v. Dawson & Co., 264 U. S. 219.) Section 2 of article 3 of the Federal Constitution does not inhibit the state from requiring employers to pay a non-discriminatory excise based upon the exercise of the privilege or right of having individuals in their employ, even though it may be measured by wages paid under maritime contracts of employment. (Steward Machine Co. v. Davis, 301 U. S. 548; Carmichael v. Southern Coal & Coke Co., 301 U. S. 495; Helvering v. Davis, 301 U. S. 619; Barwise v. Sheppard, 299 U. S. 33; Educational Films Corp. v. Ward, 282 U. S. 379; Chamberlin, Inc., v. Andrews, 271 N. Y. 1; Lawrence v. State Tax Comm., 286 U. S. 276; Gibbons v. Ogden, 9 Wheat. 1; Hump Hairpin Mfg. Co. v. Emerson, 258 U. S. 290; Western Union Tel. Co. v. Attorney-General, 125 U. S. 530; Knowlton v. Moore, 178 U. S. 41; Cornell Steamboat Co. v. Sohmer, 235 U. S. 549; Alward v. Johnson, 282 U. S. 509; Sands v. Manistee River Improvement Co., 123 U. S. 288; Trinityfarm Constr. Co. v. Grosjean, 291 U. S. 466; Susquehanna Power Co. v. State Tax Comm., 283 U. S. 291; United States v. Bevans, 3 Wheat. 336.) The unemployment insurance law does not contravene the essential purpose expressed by an act of Congress or work material prejudice to the characteristic features of the general maritime law or interfere with the proper

harmony and uniformity of that law in its international and inter-state relations. (*The Blackheath*, 195 U. S. 361; *Detroit Trust Co.* v. *The Barlum*, 293 U. S. 21; *Southern Pacific Co.* v. *Jensen*, 244 U. S. 205; *El Paso & Northeastern Ry. Co.* v. *Gutierrez*, 215 U. S. 87; *Clark* v. *Poor*, 274 U. S. 554; *Darweger* v. *Staats*, 267 N. Y. 290; *Red Cross Line* v. *Atlantic Fruit Co.*, 264 U. S. 109; *Matter of Easton*, 95 U. S. 68; *Knickerbocker Ice Co.* v. *Stewart*, 253 U. S. 149.) In the absence of congressional legislation in the field of unemploy-ment insurance, or in the event of congressional invitation to states to enact unemployment insurance laws, states are competent to enact such laws: the matter of unemployment insurance is one which does not demand uniform national treatment. (*Minnesota Rate Cases*, 230 U. S. 352; *Cooley* v. *Board of Wardens*, 12 How. 299; *Anderson* v. *Pacific Coast S. S. Co.*, 225 U. S. 187; *Manigault* v. *Springs*, 199 U. S. 473; *Transportation Co.* v. *Parkersburg*, 107 U. S. 691; *Sands* v. *Manistee River Improvement Co.*, 123 U. S. 288; *The Hamilton*, 207 U. S. 398; *The City of Norwalk*, 55 Fed. Rep. 98; *Savage* v. *Jones*, 225 U. S. 501; *Northern Coal & Dock Co.* v. *Strand*, 278 U. S. 142; *Parker* v. *Motor Boat Sales, Inc.*, 314 U. S. 244.

*H. Maurice Fridlund* and *James Ragan Roberts* for Standard Dredging Corporation, respondent. As a matter of statutory construction, the New York unemployment insurance law does not apply to claimant's employment. (*Helvering* v. *Bliss*, 293 U. S. 144; *Zellerbach Paper Co.* v. *Helvering*, 293 U. S. 172; *Old Mission Portland Cement Co.* v. *Helvering*, 293 U. S. 289; *Hartley* v. *Commissioner*, 295 U. S. 216; *Brewster* v. *Gage*, 280 U. S. 327. The New York unemployment insurance law cannot consti-tutionally be construed to cover members of a crew of a documented vessel operating on navigable waters of the United States. (*Southern Pacific Co.* v. *Jensen*, 244 U. S. 205; *Knickerbocker Ice Co.* v. *Stewart*, 253 U. S. 149; *Moran* v. *New Orleans*, 112 U. S. 69; *Harman* v. *Chicago*, 147 U. S. 396; *Butler* v. *Boston & Savannah S. S. Co.*, 130 U. S. 527; *Great Lakes Dredge & Dock Co.* v. *Kierejewski*, 261 U. S. 479; *Robins Dry Dock Co.* v. *Dahl*, 266 U. S. 448; *Saylor* v. *Taylor*, 77 Fed. Rep. 476; *The Hurricane*, 2 Fed. Rep. [2d] 70; 9 Fed. Rep. [2d] 396; *Washington* v. *Dawson & Co.*, 264 U. S. 219;

*Just* v. *Chambers*, 312 U. S. 383; *Minnesota Rate Cases*, 230 U. S. 352.)

*Jules Haberman, Arthur E. Goddard* and *Robert B. Lisle* for International Elevating Company, respondent. The power of the United States within the maritime field is exclusive and cannot be delegated to the states. (*Knickerbocker Ice Co.* v. *Stewart*, 253 U. S. 149; *Matter of Doey* v. *Howland Co.*, 224 N. Y. 30; *Matter of Keator* v. *Rock Plaster Manufacturing Co.*, 224 N. Y. 540; *Matter of Reinhardt* v. *Newport F. S. Corp.*, 232 N. Y. 115; *Southern Pacific Co.* v. *Jensen*, 244 U. S. 205; *Matter of McKinnon* v. *Kinsman Transit Co.*, 240 App. Div. 359; *Washington* v. *Dawson & Co.*, 264 U. S. 219.) The application of the State unemployment insurance law in the maritime field cannot be sustained as an excise tax. (*Mountain Timber Co.* v. *Washington*, 243 U. S. 219.)

*Frank C. Mason* and *Edward L. P. O'Connor* for Conners Marine Co., Inc., et al., respondents. The unemployment insurance law if applied to the employment of a seaman on a vessel on the navigable waters of the United States would constitute an invasion of the exclusive maritime jurisdiction vested in the Federal Government and the United States Courts. (*Southern Pacific Co.* v. *Jensen*, 244 U. S. 205; *Knickerbocker Ice Co.* v. *Stewart*, 253 U. S. 149; *Washington* v. *Dawson & Co.*, 264 U. S. 219; *Robins Dry Dock & Repair Co.* v. *Dahl*, 266 U. S. 449.) The officers and members of the crew of a vessel on the navigable waters of the United States are excluded from the operation of unemployment insurance acts by virtue of Federal legislation. (*Buckstaff Bath House Co.* v. *McKinley*, 308 U. S. 358; *Southern Pacific Co.* v. *Jensen*, 244 U. S. 205; *Lawson* v. *Shrigley*, 50 Fed. Rep. 287; *Robertson* v. *Baldwin*, 165 U. S. 275.) As a matter of construction the unemployment insurance law excludes coverage of officers and members of the crew of vessels. (*Matter of Cooper*, 22 N. Y. 67; *Rice* v. *United States*, 53 Fed. Rep. 910; *Gould* v. *Gould*, 245 U. S. 151; *Matter of Vanderbilt*, 281 N. Y. 297; *Dun & Bradstreet, Inc.*, v. *City of New York*, 276 N. Y. 198.) The State of New York may not impose a tax on the privilege of hiring officers and members of the crew of a vessel. (*Puget Sound Stevedoring Co.* v. *Tax Comm.*, 302 U. S. 90; *South Chicago Coal & Dock Co.* v. *Bassett*, 309 U. S. 251.)

*Edward K. Bachman* for Lake Tankers Corporation, respondent. To construe the New York unemployment insurance law so as to permit benefits to be paid to claimant from the New York unemployment insurance fund in respect of service performed by claimant as a member of the crew of a vessel on the navigable waters of the United States and to compel respondent to pay contributions to said fund in respect of such service would violate section 2 of article 3 of the Constitution of the United States. (*Knickerbocker Ice Co.* v. *Stewart,* 253 U. S. 149; *Southern Pacific Co.* v. *Jensen,* 244 U. S. 205; *Washington* v. *Dawson & Co.,* 264 U. S. 219.)

No appearance for Fair Water Transportation Co., Inc., Respondent.

No appearance for Ben Franklin Transportation Co., Inc., Respondent.

Finch, J. These six appeals present the question whether the New York unemployment insurance law (Labor Law, art. 18; Cons. Laws, ch. 31) imposing a pay-roll tax upon all employers of four or more employees, without discrimination and without exception here material, is applicable to marine employments.

In four of the above cases the Unemployment Insurance Appeal Board has found that the claimants had been employed as members of the crews of vessels on the navigable waters of the United States and for that reason the Board held that they were not covered by the unemployment insurance law. In the two remaining cases (*Matter of Cassaretakis* and *Matter of Bergen*) the Board has found that the claimants, although engaged in marine employments, had not been employed as members of the crews of vessels on the navigable waters of the United States, and on this basis held that they were covered by the statute in question.

Upon appeal to the Appellate Division, the decision of the Board in the four cases first mentioned above was sustained. In the other two cases, however, the determinations were reversed upon the ground that, by reason of the admiralty clause of the Federal Constitution, the unemployment insurance statute may not be held applicable to maritime employments.

The definition of employment contained in the New York Act (Labor Law, § 502) is admittedly sufficiently broad to cover all

maritime employments, including service as an officer or member of a crew of a vessel upon navigable waters of the United States, provided the whole or greater part of such employment is performed within this State. The Federal statute (U. S. Code, tit. 26, § 1607, subd. c), on the other hand, specifically excludes from the tax levied thereunder services rendered as officer or member of a crew of a vessel upon the navigable waters of the United States.

Whether or not an individual is a member of a crew of a vessel on the navigable waters of the United States presents primarily a question of fact which turns generally on whether the individual serves the ship in her navigation. (*South Chicago Coal & Dock Co.* v. *Bassett*, 309 U. S. 251, 259.) In consequence the determination of the Appeal Board, if sustained by substantial evidence, is conclusive upon the courts. (Labor Law, art. 18, § 534; *Matter* of *Morton*, 284 N. Y. 167.) Upon this record there is substantial evidence to sustain the findings of fact in this regard of the Appeal Board. As to the four claimants who were found to be members of the crews of vessels, Sheredos was a cook on a self-propelled vessel carrying petroleum between points in New York and New Jersey; Schein was an attendant on a speed boat which transported passengers from a New York city pier to the World's Fair; Knowlson was second engineer on a tugboat; Smith was a fireman on a lighter. All were plainly members of crews of vessels. On the other hand, Cassaretakis was assistant cook on board a dredge which was employed in a land filling operation in connection with the construction of a public highway. Bergen was a grain-trimmer on a floating grain elevator, his work being in connection with transfer of grain from one barge to another for purposes of further transportation. The employment of these two latter claimants, therefore, may be deemed incidental to construction and stevedoring operations, respectively, rather than to navigation. In consequence, Cassaretakis and Bergen, although concededly engaged in general maritime employment, were not members of crews of vessels on the navigable waters of the United States. These two claimants have, moreover, been found to be engaged in employment the whole or greater part of which was transacted within this State.

Two questions of law are raised, (1) whether there is constitutional objection to the application of the statute in question to maritime employments generally, and (2) if there is no such constitutional objection, whether the Congress preempted that part of the field relating to navigation by enacting a statutory prohibition against coverage by the State law, of officers and members of the crew of a vessel on the navigable waters of the United States.

In order to induce the several States to enact unemployment insurance statutes, the Federal government, by the Federal Unemployment Tax Act (Internal Revenue Code, U. S. Code, tit. 26, §§ 1600, 1601) levied a pay-roll tax upon employers, with certain exceptions, but allowed a credit up to ninety per cent of the Federal pay-roll tax to employers on account of contributions paid for State unemployment insurance. On its part the State of New York has levied a pay-roll tax upon employers measured by a percentage of the pay-roll and assessed upon all employers generally without regard to the nature of employment, with certain exceptions not here material (Labor Law, art. 18, §§ 515, 516). Neither the National nor the State government contributes anything to the fund. The moneys collected by means of this tax are used for the relief of the unemployed, concededly an object within the powers of the State. (*Carmichael* v. *Southern Coal & Coke Co.*, 301 U. S. 495.)

This tax is an excise based upon the exercise of the privilege of employing individuals. (*Steward Machine Co.* v. *Davis*, 301 U. S. 548, 578–583; *Carmichael* v. *Southern Coal & Coke Co., supra; Patton* v. *Brady*, 184 U. S. 608.) The obligations of the employer under this law are not to his employees but to the State. Likewise, claimants of benefits assert their rights against the State and not against the employer. The employer's duty to pay contributions and the employee's right to receive benefits are independent of each other. The employer must continue to pay the tax although none of his employees ever becomes entitled to benefits through lack of employment; the employee has a right to receive benefits upon becoming unemployed although his employer has failed to contribute.

A mere statement of this State law demonstrates that it does not modify or attempt to modify, alter or supplement the rights and liabilities of the parties to any maritime contract, nor does it

touch remedies enforceable in admiralty. This tax exists independently of the employment out of which it arises. The measure of the tax by the amount of wages paid does not make the tax less independent of the occupation. Conceding that these claimants performed services under a maritime contract of employment, nothing in the challenged statute in any way changes, modifies or affects the reciprocal rights and duties of the employer and employee arising out of the maritime contracts or the remedies enforceable in admiralty. There is a fundamental distinction between statutes which interfere with the rights and obligations of the parties to a maritime contract, as between themselves, and a statute which effects no such interference.

The power to levy such an excise tax and to use the funds thus raised for local purposes is a sovereign power reserved to the States, of which they were not deprived by the Constitution of the United States. In *Carmichael* v. *Southern Coal & Coke Co.*, Mr. Justice STONE (now chief justice) said: " Taxes  *  *  *  may likewise be laid on the exercise of personal rights and privileges. As has been pointed out by the opinion in the *Chas. C. Steward Machine Co.* case, such levies, including taxes on the exercise of the right to employ or to be employed, were known in England and the Colonies before the adoption of the Constitution, and must be taken to be embraced within the wide range of choice of subjects of taxation, which was an attribute of the sovereign power of the States at the time of the adoption of the Constitution, and which was reserved to them by that instrument." (p. 508.)

It is contended, however, that the State may not thus exercise its reserved powers of taxation because it involves a conflict with paramount powers vested in the Federal government in two respects; *first*, the State law is alleged to interfere with and burden maritime commerce in its national and international aspects as to which Congress alone has power to legislate; *second*, the State law is also alleged to contravene the essential purposes of and to work prejudice to characteristic features of the maritime law, and to interfere with its proper harmony and uniformity in its interstate and international relations.

The paramount power of Congress to legislate in the field of maritime law is implied from the grant to the Federal courts in

section 2 of article III of the Federal Constitution, of judicial power in all cases involving admiralty and maritime jurisdiction. It is, however, well settled that in the maritime field, just as in the field of interstate commerce generally, the state has power to act in matters of merely local concern, which do not require uniform national legislation. (*Cooley* v. *Board of Wardens*, 12 How. [U. S.] 299.) One engaged in an interstate business may be lawfully subjected to a state tax upon the instruments employed in that business (*Western Union Telegraph Co.* v. *Attorney-General*, 125 U. S. 530), and this is so even though such commerce is maritime in nature. (*Old Dominion S. S. Co.* v. *Virginia*, 198 U. S. 299, 305.)

In addition, by section 1606, subd. (a) of the Federal Tax Act, the Congress has declared that state unemployment insurance laws may be applied to interstate commerce. And in *Perkins* v. *Pennsylvania*, 314 U. S. 586; affg., 342 Penn. St. 529) the Supreme Court has held that there is no constitutional obstacle under the commerce clause to the application of the Pennsylvania unemployment insurance law to those employed in interstate commerce. This would seem to be a conclusive determination that unemployment among those engaged in interstate commerce in general is a matter of local concern as to which no uniform national legislation is needed and in which field, therefore, the states may constitutionally legislate.

As to the second objection noted above and based upon the limitations upon state legislation stated in *Southern Pacific Co.* v. *Jensen* (244 U. S. 205) it would seem to be a sufficient answer to repeat that the enactment in question is a taxing statute designed to raise funds for a state purpose. It does not, therefore, attempt to alter the contract of employment between master and servant or to change the rights and remedies enforceable in admiralty as incidental to that relationship. It does not create any new rights or liabilities between the parties. Nothing contained therein would cause a court of admiralty to alter in any respect the body of law which it applies to the cases pending before it.

That a state may, within prescribed limits, enter into the field of maritime law and add to or modify remedies enforceable in admiralty was conceded by Mr. Justice McReynolds in the *Jensen* case. In *Just* v. *Chambers* (312 U. S. 383) a statute of the State of Florida, providing that a cause of action for personal

injuries shall survive the death of the tort feasor, was held to be applicable in a court of admiralty to an action against the owner of a vessel on account of injuries occurring on navigable waters within the State boundaries. The State law, it was said, did not offend the criteria of essential purpose and uniformity laid down in the *Jensen* case. If, therefore, the states may, within the prescribed limits, actually add to the remedies under maritime law, *a fortiori*, the legislation in the case at bar may not be held to have overridden the limitations set forth in the *Jensen* case.

Respondents point to a line of authorities (*Southern Pacific v. Jensen, supra; Knickerbocker Ice Co.* v. *Stewart*, 253 U. S. 149; *Western Fuel Co.* v. *Garcia*, 257 U. S. 233; *Grant Smith-Porter Ship Co.* v. *Rohde*, 257 U. S. 469) holding workmen's compensation statutes invalid as interfering with the characteristic features and essential uniformity of admiralty law. These cases all rest upon the principle that the workmen's compensation laws set aside the common law rules respecting the rights and liabilities of employer and employee and substituted new rules for determining such rights and liabilities. These statutes become a part of the contract and thereby directly affect the rights and duties between the parties. As was said by this court in *Matter of Doey* v. *Howland Co.* (224 N. Y. 30, 36): "An award under the Workmen's Compensation Law is not made on the theory that a tort has been committed; on the contrary, it is upon the theory that the statute giving the commission power to make an award is read into and becomes a part of the contract. (*Matter of Post* v, *Burger & Gohlke*, 216 N. Y. 544.) The contract of employment, by virtue of the statute, contains an implied provision that the employer, if the employee be injured, will pay to him a certain sum to compensate for injuries sustained, or if death results, a certain sum to dependents."

A clear distinction between these cases and that of the unemployment insurance law is that the latter does not in any way operate upon the contract of employment or interfere with maritime and admiralty jurisdiction. The payment of an excise tax upon the privilege of employing others can no more be considered an unwarranted intrusion by the states into admiralty jurisdiction than can numerous other state taxes previously upheld; for instance, franchise taxes upon towing companies (*People ex rel. Cornell Steam-*

*boat Co.* v. *Sohmer*, 235 U. S. 549); taxation of insurance companies upon the writing of marine insurance policies (*Ætna Ins. Co.* v. *Houston Oil & Transport Co.*, 49 Fed. Rep. [2d] 121); taxes upon shipping (*Transportation Co.* v. *Wheeling*, 99 U. S. 273); and tolls levied upon interstate and foreign shipping using state-improved waterways. (*Sands* v. *Manistre River Improvement Co.*, 123 U. S. 288.)

It follows that there is no constitutional objection to coverage of maritime employments by the Unemployment Insurance Act of New York State.

We are thus brought to the second question, namely, whether by virtue of the provisions of section 1607 (subd. c) (par. 4) of the Internal Revenue Code (U. S. Code, tit. 26) the officers and members of the crew of a vessel on the navigable waters of the United States have been specifically excluded by Congress from coverage by state laws. We may assume that Congress has the constitutional right under the admiralty clause of the Federal Constitution, to exclude maritime employments from coverage by state unemployment insurance.

In other words does the fact that the Federal Act in the case at bar exempts from its operation the officers and crews of vessels on navigable waters prevent the states from covering maritime employment in the unemployment insurance laws which they have enacted?

From the nature of the independent power reserved to the states of taxing for their own support and to promote the general welfare of their inhabitants, there has been developed the principle that it will not be presumed that Congress intended to exclude the reserved powers of the state by virtue of paramount powers vested in Congress by the Federal Constitution unless an actual conflict exists between Federal and State legislation. In *Savage* v. *Jones* (225 U. S. 501) the court lays down this principle (at p. 533): " But the intent to supersede the exercise by the State of its police power as to matters not covered by the Federal legislation is not to be inferred from the mere fact that Congress has seen fit to circumscribe its regulation and to occupy a limited field. In other words, such intent is not to be implied unless the act of Congress fairly interpreted is in actual conflict with the law of the State."

A comparison of the Federal tax act and our State unemployment insurance act shows that there is no actual conflict between them even when the State act is construed to cover employments expressly exempted under the Federal taxing statute.

The Federal statute, of course, is not an unemployment insurance law. It is a mere taxing statute but contains a provision allowing ninety per cent of contributions exacted thereunder to be credited by employers against contributions paid under certified state systems. This credit arrangement was designed to give the states an incentive to enact their own unemployment insurance laws and to protect those states which enacted such laws against being put at a competitive disadvantage as against other states which might fail to take such action. Congress evidently believed that these objects could be accomplished by taking only certain kinds of employment while exempting other kinds. The states in creating their unemployment systems, on the other hand, had different objectives in view in canvassing the kinds of employment to be covered or excluded under their statutes. Their problem was to decide what types of employment seriously required the protection of an unemployment compensation law and what types could practically be included within such a system. Whatever types of employment the Congress might exclude, the states might exempt wholly different types upon the ground that employees in these categories did not require such protection or else that it would be impracticable or impolitic to furnish them with such protection. There is, therefore, no necessary similarity as to the types of employment either covered or exempted by the Federal and state statutes respectively.

The legislative history and the judicial interpretation of the Federal statute amply demonstrate that it was not intended thereby to strait-jacket the states in the enactment of their own unemployment insurance laws. (See Senate Report, No. 628, Cal. No. 661, 74th Congress, p. 14; *Steward Machine Co.* v. *Davis, supra,* at pp. 593, 594.) The conclusion is inescapable that Congress intended to leave to the states the widest possible latitude in setting up their unemployment compensation systems both as to the kind and extent of coverage provided. This broad policy may not be overriden by the exemptions contained in section 1607 (subd. c) (par. 4).

One word should be said in conclusion as to the argument advanced that great practical difficulties lie in the way of the states providing benefits for seamen, the nature of whose work may take them into many other states and even into foreign parts. A picture is drawn of the hopeless confusion into which maritime employment may be plunged if a number of states attempted to apply conflicting state statutes to the same employer-employee relationship. The difficulty conjured up would appear to be more imaginary than real and in no event could affect the result arrived at herein. It may be that Congress will in future decide to appropriate the entire marine field to a uniform unemployment insurance system. Such congressional action might effectively oust the states from the field because of the paramount power vested in Congress by section 2 of article III of the Federal Constitution. It is sufficient for the purpose of these appeals, however, to say that no such obstacle stands in the way of state legislation at the present time.

It follows that in the cases of the claimants, Cassaretakis and Bergen, the orders of the Appellate Division should be reversed and the determination of the Unemployment Insurance Appeal Board affirmed; in the cases involving Sheredos, Knowlson, Schein and Smith, the orders of the Appellate Division and the determination of the Unemployment Insurance Appeal Board should be reversed and the cases remitted to such Appeal Board for proceedings in accordance with this opinion, all with costs in this court and in the Appellate Division.

LEHMAN, Ch. J., LOUGHRAN, RIPPEY, LEWIS, CONWAY and DESMOND, JJ., concur.

Ordered accordingly.     (See 289 N. Y. 838, 839.)