In the Matter of ARUNDEL CORPORATION, Appellant.
EDWARD CORSI, as Industrial Commissioner, Respondent.

Third Department, March 24, 1948.

*Foley & Martin* for appellant.

*Nathaniel L. Goldstein, Attorney-General (Wendell P. Brown, Solicitor-General* and *Francis R. Curran, Assistant Attorney-General* of counsel), for respondent.

DEYO, J. This is an appeal by an employer from a decision of the Unemployment Insurance Appeal Board which affirmed the decision of a referee, and sustained an assessment against the employer for contributions upon the wages of persons employed on nonself-propelled dredges for the years 1936, 1937 and 1938.

The question involved turns upon the interpretation of subdivision 7 of section 570 of the Labor Law, which provides in part: " No contributions shall be payable by an employer on the basis of wages paid prior to January first, nineteen hundred forty-two, to any officers or members of crews of vessels." The history behind the enactment of this section is important. In the early days of unemployment insurance considerable doubt arose as to whether or not the State could constitutionally extend coverage to maritime workers due to the exclusive admiralty and maritime jurisdiction reserved to the United States Government (U. S. Const. art. III, § 2). The Attorney-General had held in 1936 (1936 Atty. Gen. 268), that since the Federal Unemployment Tax Act (U. S. Code, tit. 26, § 1607, subd. [c], par. [4]) specifically exempted from coverage " Service performed as an officer or member of the crew of a vessel on the navigable waters of the United States ", it had thereby asserted its exclusive jurisdiction over that group and that the States were powerless to act. The Unemployment Insurance Appeal Board followed this opinion by the Attorney-General with respect to services rendered upon self-propelled vessels, but declined to apply it to services rendered on board dredges and certain other types of craft. Appeals from six of these decisions were taken to this court, including that of a cook on a dredge (*Matter of Cassaretakis,* 263 App. Div. 773), and a grain trimmer on a floating grain elevator (*Matter of Bergen,* 262 App. Div. 654). In both of these cases the board had held that the men involved were not engaged in maritime pursuits, within the scope of the Attorney-General's opinion. This court reversed in both instances. In the *Bergen* case the court found from the facts that " this claimant has been engaged in interstate commerce on the navigable waters of the United States " (p. 655), and in the *Cassaretakis* case that he was " a member of the crew of a documented vessel operating on navigable waters." (P. 773.)

This court affirmed the four other cases wherein the board had found that workers on self-propelled vessels were members of the crews of vessels on navigable waters, and therefore, not covered by the State Unemployment Insurance Law. (*Matter of Sheredos,* 263 App. Div. 756; *Matter of Knowlson,* 263 App. Div. 756; *Matter of Smith,* 263 App. Div. 757; *Matter of Schein,* 262 App. Div. 573.) This court's basic decision was the same in all six cases, to wit: That the claimants were subject to the admiralty and maritime jurisdiction of the United States, and since the United States had pre-empted the field the State was divested of jurisdiction. The Court of Appeals reversed all six decisions (*sub nom. Matter of Cassaretakis,* 289 N. Y. 119), holding that there was no constitutional objection to the State applying its Unemployment Insurance Law to maritime employment generally, and that the Federal Government had not pre-empted the field. The court also said at page 125: " Whether or not an individual is a member of a crew of a vessel on the navigable waters of the United States presents primarily a question of fact which turns generally on whether the individual serves the ship in her navigation. (*South Chicago Coal & Dock Co.* v. *Bassett,* 309 U. S. 251, 259.) In consequence the determination of the Appeal Board, if sustained by substantial evidence, is conclusive upon the courts. (Labor Law, art. 18, § 534; *Matter of Morton,* 284 N. Y. 167.) Upon this record there is substantial evidence to sustain the findings of fact in this regard of the Appeal Board."

In connection with the *Cassaretakis* and *Bergen* cases the court said at page 125: " The employment of these two latter claimants, therefore, may be deemed incidental to construction and stevedoring operations, respectively, rather than to navigation. In consequence, Cassaretakis and Bergen, although concededly engaged in general maritime employment, were not members of crews of vessels on the navigable waters of the United States."

The United States Supreme Court (*sub nom. Standard Dredging Co.* v. *Murphy,* 319 U. S. 306), granted certiorari in the *Bergen* and *Cassaretakis* cases, and affirmed the Court of Appeals in both, holding that the imposition of a State unemployment insurance tax on the wages of maritime employees did no violence to the admiralty and maritime jurisdiction of the Federal Government, and that the Federal Government had not pre-empted the field. The court specifically declined to pass on the question of whether or not the two claimants involved were " members of a crew," stating at page 308, " In the view

we take, it is immaterial whether or not the employees are crew members.'' This decision came in 1942, and the Legislature in 1943, realizing the injustice upon those employers who had relied upon the opinion of the Attorney-General, adopted subdivision 7 of section 570 of the Labor Law. The question immediately before us is whether or not employees on dredges come within the intent and meaning of this section.

It is a cardinal principle of statutory construction that '' Statutes are presumed to be enacted by the Legislature with knowledge of the decisions of the courts construing the language used therein ''. (*Pouch* v. *Prudential Ins. Co.*, 204 N. Y. 281, 288; *Orinoco Realty Co.* v. *Bandler*, 233 N. Y. 24.)

Despite the obvious factual distinction between employees on dredges and sailors on ocean going steamers, the former have been accorded many of the rights and privileges of the latter under maritime law.

Dredges have been construed as '' vessels '' and dredge men considered '' seamen '' to the extent that they have been awarded maritime liens for wages. (*Saylor* v. *Taylor*, 77 F. 476; *The Atlantic*, 53 F. 607; *McRae* v. *Bowers Dredging Co.*, 86 F. 344; *City of Los Angeles* v. *United Dredging Co.*, 14 F. 2d 364.) However, these cases, and many more could be cited, are of little aid in interpreting the particular statute now before us, since the Maritime Law defines '' seaman '' as including '' every person (apprentices excepted) who shall be employed or engaged to serve in any capacity on board ''. (U. S. Code, tit. 46, § 713.) Men similarly employed were held by a divided court not to be laborers or mechanics employed upon public works, and hence, an indictment against their employer for violating the Federal eight hour act of 1892 was dismissed. (*Ellis* v. *United States*, 206 U. S. 246.) The court in that case very significantly pointed out, however, at page 259: '' The very great difficulty, if not impossibility, of dredging in the ocean, if such a law is to govern it, is a reason for giving the defendants the benefit of a doubt; and the fact that until last year the Government worked dredging crews more than eight hours is a practical construction not without its weight.'' This sentence would seem to destroy any present usefulness which the decision might otherwise have. Dredge men have also been treated as seamen to the extent that they have been allowed to recover for personal injuries under the Jones Act (U. S. Code, tit. 46, § 688; *Pariser* v. *City of New York*, 146 F. 2d 431; *George Leary Const. Co.* v. *Matson*, 272 F. 461). Here, too, however, as was pointed out in the latter case, the broad, all

inclusive statutory definition of " seaman " set forth above was involved, and the decision loses most of its significance for our purposes for that reason.

Turning now to the use of the particular phrase in question in connection with other legislation, we find that dredge men have been held to come within that portion of the Longshoremen's and Harbor Worker's Compensation Act (U. S. Code, tit. 33, § 903, subd. [a], par. [1]) which exempts from coverage a master or member of a crew of any vessel. (*Kibadeaux* v. *Standard Dredging Co.,* 81 F. 2d 670; certiorari denied 299 U. S. 549.) The purpose of this act, which was not adopted until 1927, was to give longshoremen a National Workmen's Compensation Law which would provide protection at that time thought lacking because of the exclusive admiralty jurisdiction of the Federal government. (*Bassett* v. *Massman Const. Co.,* 120 F. 2d 230, 233, certiorari denied 314 U. S. 648.) This exclusion was at the request of seamen who preferred the pre-existing remedy afforded them under the Jones Act. (*Warner* v. *Goltra,* 293 U. S. 155, 160), to which benefits dredge men, as has been pointed out, had already been admitted. Being amply protected under the pre-existing definition of seamen, it was not at all surprising that they were deemed to be included in the exception, and the fact that they were is scant authority for including them within the scope of the statute now under consideration. Furthermore, in a subsequent case, it was held that a dredge man was not a " member of a crew ", and hence, his claim for injuries was covered by the Longshoremen's Act. (*Beddoo* v. *Smoot Sand & Gravel Corp.,* 128 F. 2d 608.) A similar devision was reached in *Andersen* v. *Olympian Dredging Co.* (57 F. Supp. 827) in regard to a claim under the Jones Act by a workman employed on a barge which was used merely as a platform to support an engine and winch used in dredging operations. However, since this decision post dates the enactment of the statute in question, it cannot have had any influence on the Legislature.

The decisions in these two latter cases stem from *South Chicago Co.* v. *Bassett* (309 U. S. 251) which explains the apparent divergance of opinion and furnishes the key to the present problem. There, the employee was a deck hand on a coal lighter, whose chief task was to facilitate the flow of coal from his boat to the vessel being fueled. The deputy commissioner had awarded him compensation under the Longshoremen's Act, holding that he was not a " member of a crew." The District Court, on a trial *de novo,* vacated this award. The Court of Appeals reversed on the ground that since there was

evidence to support the commissioner's award, it should have been allowed to stand. The United States Supreme Court affirmed.this decision, holding that whether or not any particular employee was or was not a member of a crew of a vessel, presented a question of fact to be determined primarily upon whether or not such employee was "naturally and primarily on board to aid in navigation." (P. 260.) (To the same effect see *The Bound Brook*, 146 F. 160, 164; *Seneca Washed Gravel Corp.* v. *McManigal*, 65 F. 2d 779, 780; *Diomede* v. *Lowe*, 87 F. 2d 296, 298.)

The appellant lays great stress on three later cases, *Norton* v. *Warner Co.* (321 U. S. 565), *U. S. Literage Corp.* v. *Hoey* (142 F. 2d 484) and *Berwind-White Coal Mining Co.* v. *Rothensies* (137 F. 2d 60), which it alleges have modified or reversed the above holdings, and have substituted a broader test as to who is included in the crew of a vessel. Although it may be seriously doubted that such is the fact, it need not concern us here, since these cases were decided after the enactment of the statute in question, and hence, could have had no influence on the legislative intent. Furthermore, they involved barge men who obviously occupy a different position and have different duties than do dredge men. In any event, borderline cases such as this, come within a "twilight zone," in which rights must be determined case by case, and in which particular facts and circumstances are vital elements. (*Davis* v. *Department of Labor*, 317 U. S. 249, 256.)

As has been pointed out, subdivision 7 of section 570 of the Labor Law was enacted to relieve those employers who had failed to make contributions relying upon the Attorney-General's opinion of 1936, to the effect that. the State had no jurisdiction over maritime workers on navigable waters. However, the appeal board had consistently declined to include dredge workers and others employed on nonself-propelled vessels within the scope of this opinion, a fact which we assume the Legislature was aware of when the statute was enacted. That body also had before it the decision of the Court of Appeals in the *Cassaretakis* case (289 N. Y. 119, *supra*) affirming this decision, and the decision of the United States Supreme Court in *Standard Dredging Co.* v. *Murphy* (319 U. S. 306, *supra*) specifically declining to hold to the contrary. Neither *Norton* v. *Warner Co.* (321 U. S. 565, *supra*) nor *Berwind-White Coal Mining Co.* v. *Rothenseis* (137 F. 2d 60, *supra*) had been decided at that time and consequently, the test as laid down in the *South Chicago Coal & Dock Co.* case (309 U. S. 251, *supra*) and reiterated by our

own Court of Appeals in the *Cassaretakis* case, (*supra*) to the effect that the crew of a vessel means those employees who aid in navigation, as distinguished from those who perform the duties of laborers, longshoremen and harbor workers was the last word on the subject from the two highest courts. It would seem, therefore, that when the Legislature employed this particular phrase they intended that it should have the meaning then accorded it by the department of government involved and by the courts of last resort, to the end that workers of this type would not be included within its scope.

In the instant case, evidence was submitted before the referee and the appeal board relative to the types of dredges involved, their construction and their purposes, also as to the duties of the various persons on board, their hours of labor, method of pay, etc. This evidence was to some extent conflicting, and concededly, permitted conflicting inferences to be drawn as to the nature of the employment of those involved under the test above laid down. The referee and the appeal board held on the facts thus presented, that the employees involved were not " officers or members of crews of vessels." There is ample evidence to support such a decision, which thereby becomes conclusive upon the court. (Labor Law, § 623; *Matter of Cassaretakis, supra*; *Matter of Morton*, 284 N. Y. 167.)

The decision of the appeal board is affirmed, both as to the contributions paid to dredge workers prior to January 1, 1942, and for interest on contributions covering wages earned by such workers subsequent to that date, with costs and disbursements.

HILL, P. J., BREWSTER, FOSTER and RUSSELL, JJ., concur.

Decision of the appeal board affirmed, both as to the contributions paid to dredge workers prior to January 1, 1942, and for interest on contributions covering wages earned by such workers subsequent to that date, with costs and disbursements.