OPINION OF THE COURT
Alexander, J.
 Labor Law § 563 excludes from unemployment insurance coverage, among others, persons performing duties of a religious nature at a place of worship (Labor Law § 563 [2] [c]). The question on this appeal is whether this statutory provision violates the Establishment Clause of the First Amendment of the US Constitution, or establishes an impermissible classification in violation of the Equal Protection Clause of the Fourteenth Amendment of the US Constitution. We conclude that it does not.
Shirley Klein was employed in 1986 as an English teacher at Beth Jacob High School in Brooklyn, which was operated by Congregation Bais Yaakov, a religious organization.[1] She taught English literature from a curriculum provided by the school, the textbooks for which were monitored so as to exclude any secular material "damaging to the faith.” Klein’s employment with Beth Jacob was terminated before the end *665 of the 1987 school year. She filed for and received unemployment insurance benefits, but upon her former employer’s objection, a local office of the Unemployment Insurance Division of the Department of Labor determined that she was ineligible for unemployment insurance benefits because she had insufficient weeks of insured employment inasmuch as her previous employment at Beth Jacob was by a religious organization, exempt under Labor Law § 563 (2) from making contributions to the unemployment insurance fund on her behalf. She had received $4,140 in benefits which she was required to repay. Klein requested and was given a hearing before an Administrative Law Judge (ALJ) at which she argued, in part, that the employer exemption violated the Establishment and Equal Protection Clauses of the US Constitution. The ALJ sustained the determination of the local office, and in turn was affirmed by the Unemployment Insurance Appeal Board. The ALJ and the Appeal Board ruled that Klein was ineligible for unemployment insurance benefits because her position as a teacher at the Beth Jacob High School constituted employment excluded from coverage under Labor Law § 563 (2); however, neither reached the constitutional issues raised by Klein. The Appellate Division affirmed the ruling of the Board and, addressing the constitutional issues, concluded that Labor Law § 563 (2) (c) violates neither the Establishment Clause nor the Equal Protection Clause of the US Constitution (Matter of Klein [Hartnett], 164 AD2d 9). For the reasons set forth below, we now affirm the Appellate Division.
Appellant does not dispute that her position as a teacher at the Beth Jacob High School constituted noncovered employment under Labor Law § 563 (2) (c) (see, St. Martin Lutheran Church v South Dakota, 451 US 772, 783-784; Matter of Marasco [Hartnett], 145 AD2d 862, 863; Matter of Hollis Hills Jewish Center [Roberts], 92 AD2d 1039; see also, Matter of Rochester Christian Church v State of New York Pub. Serv. Commn., 55 NY2d 196, 203-204). She contends, however, that because the statute serves no secular legislative purpose, has the purpose and effect of favoring religious schools over nonreligious schools, and results in undue and excessive entanglement of government with religion, it violates the Establishment Clause of the First Amendment. She argues further that because the statute favors nonprofit religious schools over nonprofit secular or atheist schools, it unlawfully discriminates against and denies equal protection to teachers at *666 nonprofit religious schools. These arguments are without merit.
We begin our analysis by observing the oft-quoted axiom that the constitutionality of a statute is presumed, and while this presumption is rebuttable, the heavy burden of establishing the contrary beyond a reasonable doubt rests upon the challenger (see, Elmwood-Utica Houses v Buffalo Sewer Auth., 65 NY2d 489, 495; Maresca v Cuomo, 64 NY2d 242, 250). As the following discussion demonstrates, appellant has failed in that burden.
The First Amendment of the US Constitution provides, in pertinent part, that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof’ (US Const 1st Amend). These provisions, commonly known as the Establishment and Free Exercise Clauses, are applicable to the States through the Fourteenth Amendment (see, Abington School Dist. v Schempp, 374 US 203, 215-216). The basic purpose of the Religion Clauses is to insure that government will take no action that either sponsors or favors any particular religion, or interferes with the free exercise of religion (see, Walz v Tax Comma., 397 US 664, 669). This doctrine of "benevolent neutrality” permits religious exercise to exist without sponsorship and without interference. The doctrine recognizes, however, that no absolute separation between church and State is really possible, because "the very existence of the Religion Clauses is an involvement of sorts— one that seeks to mark boundaries to avoid excessive entanglement” (id., at 670). Thus, it is well established that "[t]he limits of permissible state accommodation to religion are by no means co-extensive with the noninterference mandated by the Free Exercise Clause” (id., at 673; see also, Corporation of Presiding Bishop v Amos, 483 US 327, 334).
The United States Supreme Court has indicated that the constitutional validity of laws challenged under the Religion Clauses of the First Amendment is to be evaluated by determining whether the statute has a secular legislative purpose; whether its principal or primary effect is one that neither advances nor inhibits religion; and the statute must not foster excessive government entanglement with religion (Lemon v Kurtzman, 403 US 602, 612-613).[2]
*667 Appellant contends that Labor Law § 563 (2) (c) fails this test. She argues that the original and only legislative purpose of the statute was to advance religion over nonreligion by exempting nonprofit religious schools from the responsibility of providing unemployment insurance coverage for teachers employed by them; that the principal or primary effect of the statute is to impermissibly advance religious schools over nonreligious schools; and that it unconstitutionally entangles the State in religious matters by requiring that a determination be made whether the employer is a place of worship and whether the claimant employee is performing duties of a religious nature.
Appellant offers little or no analysis to support these assertions. Moreover, her contentions are fatally flawed. She inappropriately purports to examine subdivision (2) (c) of Labor Law § 563 in isolation, notwithstanding that to properly ascertain the intent of the Legislature, and thus the constitutionality of the statute under the Establishment Clause, that subdivision must be viewed in the context of the entire legislative act which embodies it (see, McKinney’s Cons Laws of NY, Book 1, Statutes § 97). The legislative history of Labor Law § 563 demonstrates that the purpose of the enactment was to afford the protection of the Unemployment Insurance Law to employees of nonprofit organizations which were then exempt from compulsory coverage. To that end, the general exemption of nonprofit religious, charitable, scientific, literary and educational organizations was repealed (see, Mem of Industrial Commr, Governor’s Bill Jacket, L 1965, ch 740). Although exempt from compulsory coverage, these nonprofit organizations had the option under the prior law to voluntarily elect coverage. It seems that relatively few of them had availed themselves of this opportunity, however, in consequence of which most of the 350,000 employees of such organizations were unprotected by the prior Unemployment Insurance Law (id.). While the statute repealed the blanket exemption from the Unemployment Insurance Law of nonprofit religious, charitable, scientific, literary and educational organizations, the 1965 enactment retained exemptions for various groups the Legislature determined had stable employment, such as religious organizations and medical and teaching staffs and those who, when employed by the nonprofit organization, are not *668 active members of the labor force in a true sense, such as clients of sheltered workshops and students working for the educational organizations where they are enrolled (id.; see also, L 1965, ch 740).
Thereafter, in order to insure that New York employers would continue to receive full Federal tax credits against their contributions to the unemployment insurance fund, and so that New York would continue to receive Federal grants for the administration of the Unemployment Insurance Law, the statute was amended to conform to changes in the Federal Unemployment Tax Act, resulting in the elimination of many of the exclusions affecting nonprofit organizations (see, Mem of Industrial Commr, Governor’s Bill Jacket, L 1971, ch 1027; Mem of Deputy Industrial Commr for Legal Affairs, Governor’s Bill Jacket, L 1977, ch 675, § 10).[3] However, the exemptions relating to ministers, lay members of a bona fide church engaged in religious functions and persons employed as caretakers or for the performance of duties of a religious nature, were retained (L 1965, ch 740).
Additionally, the exemption continued to be applicable to other nonreligious organizations and types of employment as well. For example, inmates of a custodial or penal institution are exempt, as are persons who participate in certain youth services programs[4] and persons who receive rehabilitative services or are given remuneration to work at a facility conducted to provide work for persons physically or mentally impaired. Contrary to appellant’s assertions, the purpose of the legislation was not to provide the benefit of the exemption exclusively to religious organizations; rather, the clear secular legislative purpose was to extend unemployment insurance coverage to previously exempt employees of nonprofit organizations, while retaining the exemption for the benefit of a range of nonprofit organizations whose employees were not active members of the work force in the true sense and whose employment was stable. Thus, religious organizations did not receive the exclusive benefit of the exemption, but only received an incidental benefit accorded to a range of other *669 organizations. The fact of this incidental benefit does not render the exemption unconstitutional (cf., Texas Monthly v Bullock, 489 US 1).
The exemption of section 563 (2) is not unlike the real property tax exemption found constitutional by the United States Supreme Court in Walz v Tax Commn. (supra). There the Court found that New York City’s tax exemption for property used exclusively for religious, educational, or charitable purposes did not advance religion by granting an exemption to all houses of worship as well as to a broad class of property owned by nonprofit organizations. The Court concluded that the statute "simply spare[s] the exercise of religion from the burden of property taxation levied on private profit institutions” (id., at 673). Similarly, section 563 (2) spares various nonprofit organizations, including religious organizations, the burden of contributing to the unemployment insurance fund on behalf of certain designated employees in furtherance of the "time-honored” tradition of exempting nonprofit organizations from general taxation (L 1965, ch 740, § 1).
The secular purpose requirement is aimed at preventing the relevant governmental decision maker — in this case the Legislature — from abandoning neutrality and acting with the intent of promoting a particular point of view in religious matters (Corporation of Presiding Bishop v Amos, 483 US 327, 335, supra). That requirement is satisfied by section 563 (2) (c) for the additional reason that it minimizes governmental intrusion into religious affairs by avoiding the necessity of scrutinizing a religious organization’s tenets each time a teacher or other employee is discharged for reasons related to the group’s religious mission (see, e.g., Corporation of Presiding Bishop v Amos, 483 US 327, supra). "[I]t is a permissible legislative purpose to alleviate significant governmental interference with the ability of religious organizations to define and carry out their religious missions” (id., at 335). We therefore find no basis for concluding that the legislative purpose in enacting Labor Law § 563 (2) (c) was to advance religious schools over nonreligious schools (see, Lemon v Kurtzman, 403 US 602, 613, supra).
We similarly reject appellant’s contentions that the "principal or primary effect” of Labor Law § 563 (2) (c) is to impermissibly advance religious schools over nonreligious schools and that its operation results in undue and excessive entan *670 glement of government with religion. The mere fact that religious groups are included within a range of organizations that benefit from the exemption does not have the "principal or primary” effect of "advancing religious schools over nonreligious schools” such that it is rendered unconstitutional. Nor does the fact that the exemption "spare[s] the exercise of religion from the burden of [unemployment insurance contributions] levied on [nonreligious schools]” render the statute an attempt to "establish” or "advance” religion (see, Walz v Tax Commn., 397 US 664, 673, supra). The Supreme Court has never indicated that statutes that give special consideration to religious groups are per se invalid (see, Corporation of Presiding Bishop v Amos, 483 US 327, 338, supra), or that relieving such institutions of obligations borne by other institutions constitute sponsorship or "establishment” of a particular religion or religion generally (Walz v Tax Commn., supra). "For a law to have forbidden 'effects’ under Lemon, it must be fair to say that the government itself has advanced religion through its own activities and influence” (Corporation of Presiding Bishop v Amos, supra, at 337). The fact that the exemption provided by Labor Law § 563 may permit religious schools to better advance their purposes by relieving them of the financial burden of contributing to the unemployment insurance fund for their employees does not raise the specter of impermissible "sponsorship, financial support, and active involvement of the sovereign in religious activity” (id., at 336-337). Indeed there are many statutes, covering a variety of situations, which place religious institutions in special protective categories with respect to many activities, but are not considered as having "established” or having "the principal or primary effect” of advancing religion, including paying real property taxes (Real Property Tax Law § 420-a [1] [a]), zoning (see, e.g., Matter of Diocese of Rochester v Planning Bd., 1 NY2d 508), and the use of alcohol in the community (Alcoholic Beverage Control Law § 64 [7]) (see, Matter of Rochester Christian Church v State of New York Pub. Serv. Commn., 55 NY2d 196, 202, supra).
Finally, although amendments to Labor Law § 563 (2) have eliminated many of the nonreligious employers that were originally exempted from compulsory contributions to the unemployment insurance fund (see, L 1971, ch 1027; L 1977, ch 675), the statute still provides the exemption to nonreligious as well as religious organizations. Therefore, it cannot be said that it is aimed exclusively or specifically at religious *671 groups or organizations (cf., Texas Monthly v Bullock, 489 US 1, supra), or that it impermissibly benefits religious organizations more than nonreligious organizations (see, Walz v Tax Commn., 397 US 664, 672-673, supra).
We agree with the Appellate Division that the statute’s primary effect is the efficient administration of the Labor Law, attained in part by maintaining a "benevolent neutrality” toward all religion; in other words, the statute minimizes the involvement of government with the free exercise of religion. Although one effect of the statute is to allow religious organizations an economic benefit as a result of the exemption, such benefit is incidental, and does not deprive the exemption, as a whole, of its secular purpose and effect (see, Texas Monthly v Bullock, supra, at 14-15). Indeed, "[w]here, as here, government acts with the proper purpose of lifting a regulation that burdens the exercise of religion, [there is] no reason to require that the exemption come packaged with benefits to secular entities” (Corporation of Presiding Bishop v Amos, supra, at 338). Moreover, since the government does not transfer part of its revenue to religious organizations, but simply abstains from demanding that religious organizations make payments on behalf of certain employees performing religious duties (see, Walz v Tax Commn., 397 US 664, 675, supra), the effect of the exemption is to "restrict * * * the fiscal relationship between church and state, and * * * to complement and reinforce the desired separation insulating each from the other” (id., at 676).
We find no unconstitutional entanglement by the State in religious matters required by the provisions of section 563 (2) (c). In analyzing a State’s involvement in religion "[t]he test is inescapably one of degree,” and "the questions are whether the involvement is excessive, and whether it is a continuing one calling for official and continuing surveillance leading to an impermissible degree of entanglement” (Walz v Tax Commn., supra, at 674, 675). For the purposes of section 563 (2) (c), however, the inquiry required to determine the religious status of an employer and thus the applicability of section 563 (2) (c) is minimal; legitimate good-faith characterizations of religious status by an organization must be accepted by the civil courts unless found to be insincere or a sham (see, Matter of Holy Spirit Assn. for Unification of World Christianity v Tax Commn., 55 NY2d 512, 527-528; Matter of Hollis Hills Jewish Center [Roberts], 92 AD2d 1039, 1040, supra). Thus, rather than fostering excessive government entangle *672 ment with religion, the exemption under examination here necessarily gives rise to a lesser degree of intrusion than would be required were the exemption not granted. Without the exemption there would be "official and continuing surveillance” required by collection activities and the attendant enforcement of the collection and compensation provisions of the statute (see, Labor Law §§ 570-575; see also, Walz v Tax Commn., supra, at 674-675). We conclude that any entanglement between church and State is minimized by the exemption found in section 563 (2) (c), thereby effectuating a more complete separation between the two (see, Corporation of Presiding Bishop v Amos, 483 US 327, 339, supra; Walz v Tax Commn., supra, at 674-675).
Appellant’s equal protection claim likewise must fail because the statutory classification at issue is reasonably related to legitimate State interests. There is no fundamental right to unemployment insurance benefits and the statute does not involve a suspect classification; therefore, to withstand an equal protection challenge the exclusion need only bear a rational relation to a legitimate government interest (see, Ohio Bur. of Employment Servs. v Hodory, 431 US 471, 489; People v Whidden, 51 NY2d 457, 460, appeal dismissed 454 US 803). The statutory classification involved here is based upon the religious nature of appellant’s employment, excluding from mandatory unemployment insurance coverage persons "employed at a place of religious worship * * * for the performance of duties of a religious nature” (Labor Law § 563 [2] [c]). As noted above, the original purpose of the exclusions of Labor Law § 563 (2) was to extend unemployment insurance coverage to employees of certain nonprofit organizations while retaining the exemption for some organizations, including religious organizations, in accordance with the "time-honored” tradition of sparing certain tax-exempt, nonprofit organizations from the burden of general taxation. In addition, the exemption promotes the efficient administration of the unemployment insurance program by avoiding undue government involvement in problems peculiar to religious employment. Section 563 (2) (c) is rationally related to these legitimate purposes and, therefore, does not offend the Equal Protection Clause.
*673 Accordingly, the order of the Appellate Division should be affirmed, with costs.
Chief Judge Wachtler and Judges Simons, Kaye, Titone, Hancock, Jr., and Bellacosa concur.
Order affirmed, with costs.

. The students at Beth Jacob High School were Orthodox Jewish girls and all the teachers were required to be Jewish women.

. We note the pendency before the Supreme Court of Lee v Weisman (— US — [No. 90-1014, argued Nov. 6, 1991 (see, Arguments Before the Court, 60 USLW 3351)]), where it was argued that, in the context of prayer in public *667 ceremonies, the Court should reexamine the three-part separation rubric established in Lemon.

. Unemployment insurance benefits in New York are provided through a joint Federal-State program pursuant to the Federal Unemployment Tax Act (FUTA) (26 USC §§ 3301-3311) and the State Unemployment Insurance Law (Labor Law §§ 500-643), with FUTA imposing minimum coverage requirements on the State system.

. The exclusion of employees of youth service programs (Labor Law § 563 [2] [f]) was added by a recent amendment (L 1991, ch 413, § 62).