In the Matter of FAITH BIBLE CHURCH, Appellant. JOHN F. HUDACS, as Commissioner of Labor of the State of New York, Respondent.

Third Department, April 30, 1992

APPEARANCES OF COUNSEL

*Kriss & Kriss (Dominick J. Brignola* of counsel), for appellant.

*Robert Abrams, Attorney-General (Steven Segall* of counsel), for respondent.

**OPINION OF THE COURT**

YESAWICH JR., J.

The employer is a church located in the Town of Queensbury, Warren County, and organized under the Not-For-Profit Corporation Law. It is appealing a decision of the Unemployment Insurance Appeal Board which affirmed the determination of an Administrative Law Judge that the services performed by the church's secretaries in 1985 were neither "religious functions" nor "duties of a religious nature", thus making the church liable for unemployment insurance contributions.

Although review of a religious organization's assertion

that its aims and activities are religious for the purpose of classifying usage of real property is limited to whether that assertion is bona fide *(see, Matter of Holy Spirit Assn. for Unification of World Christianity v Tax Commn.,* 55 NY2d 512, 521), review for the purposes of determining whether a religious organization's employees' functions or duties are excluded from unemployment insurance coverage is not *(see,* Labor Law § 563 [2]; *Matter of Vecchio [Long Is. Lutheran High School—Hartnett],* 176 AD2d 1100). Such exclusions include, *inter alia,* "a lay member elected or appointed to an office * * * and engaged in religious functions" (Labor Law § 563 [2] [b]) and "a person employed at a place of religious worship * * * for the performance of duties of a religious nature" (Labor Law § 563 [2] [c]). Our assessment of the Board's construction of these exclusions is limited to whether it has a rational basis *(see, Matter of Marasco [Hartnett],* 145 AD2d 862, 863). Because the Board's interpretation that the elected/appointed official exclusion applies only to persons with authority or responsibility within the congregation is not arbitrary and capricious, and its findings that the employer's secretaries did not hold such positions and did not engage in religious functions nor perform religious duties are supported by substantial evidence, we affirm.

■ Even accepting the employer's contention that the secretaries were appointed by the pastor and the Board of Deacons, the record evidence indicates that their duties were mainly secular. Although all church staff members are required to be church members and to sign a form entitled "Standard for Workers" outlining the religious standards they must follow, there is no proof apart from the belief expressed by Marie Close, a secretary employed by the church during the period in question, and the church pastor who was hired soon thereafter, that the secretaries' duties were religious in nature or that the services they actually furnished were anything other than the secular duties performed by all similarly employed persons, namely, answering the telephone, screening calls, making appointments for the pastor, taking inventory, ordering supplies, preparing the minutes of the congregation meetings, filing, and working on layout, typing and copying of the church bulletin. Granting that Close testified that she occasionally supervised church school children during lunch period, she also stated that this was not a regular duty; and while she did provide some religious counseling and taught Sunday school for toddlers, her testimony was that she did so

on a voluntary basis, not as part of her paid secretarial job duties. Hence, the Board's conclusion that her services were not excluded from unemployment insurance coverage by Labor Law § 563 (2) is rational.

■ The employer's argument that this result violates the Federal and State Constitutions is to no avail. Applying the three-prong test set forth in *Lemon v Kurtzman* (403 US 602, 612-613), we are of the view that the Board's interpretation of these provisions of the Labor Law does not offend the Establishment Clause (US Const 1st Amend). The Unemployment Insurance Law was enacted for the secular purpose of insuring "the public good and the well-being of the wage earners of this state * * * [who become] unemployed through no fault of their own" (Labor Law § 501) and, as recently observed by the Court of Appeals, Labor Law § 563 (2) was intended "to extend unemployment insurance coverage to previously exempt employees of nonprofit organizations, while retaining the exemption for the benefit of a range of nonprofit organizations whose employees were not active members of the work force in the true sense and whose employment was stable" *(Matter of Klein [Hartnett],* 78 NY2d 662, 668). Further, we believe that the primary effect of Labor Law § 563 (2) neither advances nor inhibits religion *(see, supra,* at 669-670) and that the fact that this section requires the Board to classify employees' duties as religious or secular does not lead to excessive entanglement because such classification is based on precedential decisions made by the Board, not scriptural interpretation *(see, Swaggart Ministries v California Bd. of Equalization,* 493 US 378, 393-397; *Mueller v Allen,* 463 US 388, 403; *Matter of Klein [Hartnett], supra,* at 671).

■ Nor does so holding violate Federal and State equal protection requirements (US Const 5th, 14th Amends; NY Const, art I, § 11). The statutory scheme at issue does not involve a suspect classification *(see, Matter of Klein [Hartnett], supra,* at 672) or discrimination among religions *(see, Corporation of Presiding Bishop v Amos,* 483 US 327, 339). Rather, it treats employees of the same religious organization in a disparate manner based, not on their religious beliefs, but on the differences in their situations, i.e., the nature of their employment. Since this difference in treatment is rationally related to legitimate governmental interests, the Board's interpretation passes constitutional muster.

■ With respect to State and Federal Free Exercise Clauses (US Const 1st Amend; NY Const, art I, § 3), we are not

convinced that the employer has shown that the Unemployment Insurance Law, which the employer equates to a tax, burdens a sincerely held religious belief *(see, Ware v Valley Stream High School Dist.,* 75 NY2d 114, 124). Nor is there any evidence that the payment of the unemployment contributions itself violates the church's religious teachings *(cf., United States v Lee,* 455 US 252, 257; *Sherbert v Verner,* 374 US 398). And the fact that the impact of this statute, which applies generally to all employers, decreases the funds available for the church's religious activities is not constitutionally significant *(see, Swaggart Ministries v California Bd. of Equalization, supra,* at 391).

■ Finally, we are not persuaded that Labor Law § 563 alters or repeals exemptions in violation of the New York Constitution (art XVI, § 1) because, by its very terms, that constitutional provision applies only to exemptions for real or personal property used exclusively for, *inter alia,* religious purposes and the unemployment insurance assessment at hand applies only to employees whose functions or duties are not religious *(see,* Labor Law § 563 [2]); moreover, the unemployment assessment is not a tax on real or personal property *(see, Matter of Cassaretakis [Miller],* 289 NY 119, 126, *affd sub nom. Standard Dredging Corp. v Murphy,* 319 US 306).

The employer's remaining arguments do not merit comment.

MIKOLL, J. P., MERCURE, CREW III and CASEY, JJ., concur.

Ordered that the decision is affirmed, without costs.